MAYER BROWN LLP
JOHN NADOLENCO (181128)
jnadolenco@mayerbrown.com
MATTHEW H. MARMOLEJO (SBN 242964)
mmarmolejo@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 229-9500
Facsimile:  (213) 625-0248

Attorneys for Plaintiffs
Pacific Bell Telephone Company, BellSouth Telecommunications, LLC, Southwestern Bell Telephone Company, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Inc., Nevada Bell Telephone Company, The Ohio Bell Telephone Company, The Southern New England Telephone Company, and Wisconsin Bell, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY, BELLSOUTH TELECOMMUNICATIONS, LLC, SOUTHWESTERN BELL TELEPHONE COMPANY, ILLINOIS BELL TELEPHONE COMPANY, INDIANA BELL TELEPHONE COMPANY, INCORPORATED, NEVADA BELL TELEPHONE COMPANY, THE OHIO BELL TELEPHONE COMPANY, THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY AND, WISCONSIN BELL, INC., <br><br>        Plaintiffs, <br><br>  v. <br><br> 88 CONNECTION CORPORATION, <br><br>        Defendant. | Case No.  **'13CV1157 L    KSC** <br><br> **COMPLAINT** |

Plaintiffs Pacific Bell Telephone Company ("Pacific Bell"), Southwestern Bell Telephone Company ("Southwestern Bell"), BellSouth Telecommunications, LLC ("BellSouth"), Illinois Bell Telephone Company ("AT&T Illinois"), Indiana Bell Telephone Company, Incorporated ("Indiana Bell"), Nevada Bell Telephone Company ("Nevada Bell"), The Ohio Bell Telephone Company ("Ohio Bell"), The Southern New England Telephone Company ("SNET"), and Wisconsin Bell, Inc. ("Wisconsin Bell"), collectively referred to as the "AT&T ILECs" and individually referred to as the names in quotes above and/or the "AT&T ILEC," now file this Complaint seeking declaratory, injunctive, and monetary relief from Defendant 88 Connection Corp. ("88 Connection").

1. This case involves 88 Connection's attempts to evade paying the AT&T ILECs the compensation federal law requires when 88 Connection's customers make long-distance telephone calls using the AT&T ILECs' network facilities. The AT&T ILECs operate telecommunications networks in twenty-one states, and give other long-distance telecommunications providers access to their networks so that the other long-distance telecommunications providers' customers can initiate calls. In return for access to the AT&T ILECs' networks, long-distance telecommunications providers are required by law and the AT&T ILECs' federal tariffs to pay "switched access service" charges to the AT&T ILECs. As detailed below, 88 Connection has implemented a scheme through which it disguises its customers' long-distance calls as local calls, which are not subject to switched access service charges, and thereby evades its obligations to pay the AT&T ILECs the compensation to which they are entitled. The AT&T ILECs request that the Court: (i) declare that 88 Connection is in violation of the FCC's orders and rules regarding access charges and in violation of the AT&T ILECs' lawful interstate tariffs; (ii) enjoin 88 Connection from further violations; (iii) order 88 Connection to provide an accounting of the access charges it has unlawfully evaded; and (iv) order 88 Connection to compensate the AT&T ILECs for their damages,

including the recovery of access charges and applicable late payment charges that 88 Connection has unlawfully evaded.  In further support of this Complaint, the AT&T ILECs state as follows:

**I.     THE PARTIES**

2. Pacific Bell Telephone Company ("Pacific Bell") is a California corporation and has its principal place of business in San Francisco, California. Pacific Bell is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in California.

3. BellSouth Telecommunications, LLC ("BellSouth") is a Georgia corporation with its principal place of business in Atlanta, Georgia.  BellSouth is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee.

4. Southwestern Bell Telephone Company ("Southwestern Bell") is a Delaware corporation and has its principal place of business in Dallas, Texas. Southwestern Bell is an incumbent local exchange carrier ("ILEC"), as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Arkansas, Kansas, Missouri, Oklahoma and Texas.

5. Illinois Bell Telephone Company ("AT&T Illinois") is an Illinois corporation and has its principal place of business in Chicago, Illinois.  Illinois Bell Telephone Company is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Illinois.

6. Indiana Bell Telephone Company, Incorporated ("Indiana Bell") is an Indiana corporation and has its principal place of business in Indianapolis, Indiana. Indiana Bell is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Indiana.

7. Nevada Bell Telephone Company ("Nevada Bell") is a Nevada corporation and has its principal place of business in Reno, Nevada. Nevada Bell is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Nevada.

8. The Ohio Bell Telephone Company ("Ohio Bell") is a Ohio corporation and has its principal place of business in Cleveland, Ohio. Ohio Bell is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Ohio.

9. The Southern New England Telephone Company ("SNET") is a Connecticut corporation and has its principal place of business in New Haven, Connecticut. SNET is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Connecticut.

10. Wisconsin Bell, Inc. ("Wisconsin Bell") is a Wisconsin corporation and has its principal place of business in Milwaukee, Wisconsin. Wisconsin Bell is an ILEC, as defined by 47 U.S.C. § 251(h), and provides local exchange telecommunications services and exchange access services in Wisconsin.

11. Defendant 88 Connection Corp. is a California corporation and has its principal place of business in San Francisco, California. 88 Connection provides telecommunications services and products, including prepaid and rechargeable calling card services.

**II.   JURISDICTION AND VENUE**

12. This is a civil action arising under the laws of the United States, including Section 203 of the Communications Act, 47 U.S.C. §§ 151 *et seq*. The AT&T ILECs seek to enforce federal tariffs filed with the Federal Communications Commission ("FCC") pursuant to 47 U.S.C. § 203, as well as orders and rules entered by the FCC. This Court accordingly has jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 47 U.S.C. § 207. Venue in this district is proper

3

pursuant to 28 U.S.C. § 1391(b), as 88 Connection resides in this district within the meaning of 28 U.S.C. §1391(c) and (d) and/or because 88 Connection has agents and transacts business in this district and/or because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III. BACKGROUND

### A. Overview of Access Charges

13. The AT&T ILECs operate local exchange networks in designated service areas, originating, transporting, and terminating local telecommunications traffic (such as telephone calls between two persons in the same local area). In addition to carrying local calls, the AT&T ILECs also help long-distance carriers originate and complete their long-distance calls, as explained further below. In exchange for giving long-distance carriers "access" to their local networks to provide long distance call services, the AT&T ILECs are entitled to "switched access charges" by law and under their effective federal tariffs. Each AT&T ILEC's tariff describes Switched Access Service as a communications path between the end user and the access customer, through the AT&T ILEC's facilities or "plant." The AT&T ILECs' tariffs specify the various rate elements applicable to switched access service, priced on an *a la carte* basis.

14. When a customer makes a traditional long-distance (or "interexchange") call, he or she typically dials the number 1, followed by the "area code" for the number to be called, and then the seven-digit phone number. For example, a customer of Pacific Bell in San Diego's 619 area code who wants to call someone in New York's 212 area code would dial "1-212-NXX¬XXXX" where "NXX-XXXX" is the desired phone number. The AT&T ILEC, in this example, Pacific Bell, then transports the call over its network to the point of presence ("POP") of the calling customer's long-distance carrier for that area. From there, the long-distance carrier transports the interexchange call to its POP in the area of the called party. Then, it delivers the call to the local exchange carrier

4

that serves the called party, and that carrier finishes delivering the call to the called party. The long-distance carrier bills the calling party for the call.

15. For such interexchange calls, long-distance providers are obligated to pay the local exchange carriers (*e.g.*, Plaintiffs) international, interstate, or intrastate access charges at each end of the call, depending on the location of the calling and called parties. The local exchange carrier that serves the customer that placed or "originated" the call – in the above example, the customer in San Diego who obtains local phone service from Pacific Bell – is entitled to "originating" access charges. Based on the San Diego area code and phone number of the customer that originated the call, and the New York area code and phone number that the customer dialed, the local exchange carrier can tell it is a long-distance call and can bill the long- distance carrier for "originating access charges" to obtain compensation for the use of its network. (The local exchange carrier that serves the customer at the receiving end of the call in New York is entitled to "terminating" access charges. This Complaint, however, is concerned only with the switched access service charges that 88 Connection evaded and continues to evade on the originating side of the call.)

16. *International* access charges apply to calls that begin (or "originate") in the United States and end (or "terminate") in a different country. The rates, terms, and conditions of the AT&T ILECs' international access charges are set forth in tariffs filed with the FCC.

17. *Interstate* access charges apply to calls that originate in one state and terminate in a different state, for instance the above-described call from a customer in San Diego, California, to a person in New York. The rates, terms, and conditions of the AT&T ILECs' interstate access charges are set forth in tariffs filed with the FCC.

### B. Prepaid Calling Card Services

18. 88 Connection provides long-distance phone service through prepaid calling card services, which allow, among other things, a customer to pay in advance for long-distance calls.

19. 88 Connection's calling card services employ a prepaid debit system: a customer purchases a "card" with a specific balance and the cost of any call is then deducted from this balance. From the perspective of the end user, a long-distance call made via 88 Connection's prepaid calling card services is functionally the same as a traditional long-distance call: in each case, the customer makes a call to a home or business in a different state or a different local exchange. A prepaid calling card call reaches that result in the following way. First, the customer gains access to the calling card service provider's platform, traditionally by dialing a toll-free (*e.g.* 1- 800) number. Once the customer is connected to the calling card service provider's platform, the customer is typically prompted to enter a personal identification number in order to authenticate the card and the available balance. After this validation, the customer dials the number of the party he or she wants to call. Typically, prepaid calling card services are used for long-distance or international calls. Further, because the customer dials a number beginning "1-800" the local exchange carrier knows that access charges are applicable.

20. Access charges apply to "1-800" calls in the same way they apply to traditional long-distance calls. While 1-800 calls are "toll-free," because the person placing the call does not receive a separate long-distance charge for that call on his or her bill, they are not literally "free." The long-distance provider simply receives its revenue in a different way. In this case, the long-distance provider (*e.g.*, 88 Connection) receives its revenue up front, when the customer pays for the prepaid calling card service. Likewise, the local service provider (*e.g.* one of the AT&T ILECs) still incurs costs to provide network access to the long-distance provider, and is still entitled to compensation from the long-distance provider.

21.     Just as with a traditional long-distance call, the AT&T ILEC provides switched access services for prepaid calls of the type offered through 88 Connection's services.  The AT&T ILEC transports the call from its starting point (the phone used by the calling customer to place the call) to the point of interconnection ("POI") between Pacific Bell (or another AT&T ILEC) and the carrier to which the telephone number dialed is assigned. After Pacific Bell (or another AT&T ILEC) hands off the call at the POI, the call is handled by that carrier and the long-distance calling card provider so that the calling customer can make a long-distance call through the calling card service provider's platform.  In return for providing this "access" and use of its network, Pacific Bell (and any other AT&T ILEC providing the use of its network) is entitled by law and its effective federal tariffs to receive compensation, in the form of switched access service charges, from the long-distance calling card service provider.

### C.    FCC Orders

22.     The FCC has made clear that all calling card service providers must pay the tariffed access charges for their customers' long-distance calls.  In a February 2005 order, the FCC stated that a particular prepaid calling card service was a "telecommunications service" as defined by the Telecommunications Act of 1996. *AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services*, 20 FCC Rcd. 4826, ¶ 14 (rel. Feb. 23, 2005).  The FCC then initiated a rulemaking to consider more generally the classification and jurisdiction of "new forms of prepaid calling cards." *Id.* at ¶ 2.

23.     After receiving additional evidence and comments, the FCC decided that "all" prepaid calling card providers are telecommunications service providers and accordingly must pay the applicable interstate or intrastate access charges on long-distance calls made via their platforms. *In re Regulation of Prepaid Calling Card Services*, 21 FCC Rcd. 7290, ¶¶ 1, 10, 27 (rel. June 30, 2006).  In particular, the FCC held that interstate access charges apply when a call made via a calling

card originates in one state and terminates in another, while intrastate access charges apply when a call made via a calling card originates and terminates in different areas within the same state. *Id.* ¶ 27. The FCC issued this straightforward rule in order to eliminate any "incentives for [calling card service] providers to reduce exposure to charges they may owe or evade them altogether." *Id*. ¶ 8. Moreover, the FCC wanted to provide "a level regulatory playing field for calling card providers," so that providers could not engage in a "'gaming' of the system" and gain an unfair advantage by rigging their service to evade access charges. *Id.*

24. The FCC expressly addressed "the logistics of requiring *all* prepaid calling card service providers to pay intrastate and interstate access charges," so that "calling card providers and their underlying carriers" would not have the "ability to avoid intrastate access charges." *Id*. at ¶¶ 27, 31. The FCC resolved those logistical issues by establishing "certification and reporting requirements … to ensure compliance with our existing access charge rules." *Id.* ¶ 31. These certification and reporting requirements extend to "*all* prepaid calling card providers" (*id.* ¶ 1), providing further confirmation that the underlying access charge rules likewise apply to all providers.

### D. Defendant's Attempts to Game the System and Avoid Compensating the AT&T ILECs Through Access Charges

25. Notwithstanding the FCC's clear requirement that "all" calling card service providers must pay access charges, 88 Connection has used the AT&T ILECs' networks for its customers' long-distance calls without paying the AT&T ILECs the required access charges. 88 Connection has avoided paying access charges by disguising certain long-distance calls as local calls.

26. 88 Connection sells calling card services that use telephone numbers that are considered "local" in the area in which those cards are sold (rather than the traditional 1-800 numbers) so that its customers can originate international and/or interstate interexchange prepaid calling card calls to their calling card platforms.

The local phone numbers are assigned to 88 Connection by competing local exchange carriers ("CLECs") that provide local exchange telecommunications service within the AT&T ILECs' service areas. In this manner, calls made through 88 Connection's calling card services appear to be local calls. Accordingly, the AT&T ILECs route calls made to the calling card's local telephone number over local interconnection facilities to the CLEC from which 88 Connection obtained the local telephone number. For example, a San Diego customer with a 619 area code might place a call to New York from a phone line provided by Pacific Bell by dialing a platform number that also begins with a 619 area code. While the call is in reality an interstate long-distance call to New York, it would look to Pacific Bell like a local call from one San Diego phone to another San Diego phone. Thus, Pacific Bell would transmit the call to the CLEC through which the call is transported to 88 Connection's calling card platform, but not charge 88 Connection for access services, because it does not know the true non-local destination of the call.

27. 88 Connection has, at a minimum, constructively ordered access service from Pacific Bell, as well as all the other AT&T ILECs. Either directly or through CLECs, 88 Connection offers service and is interconnected with Pacific Bell's network, as well as the other AT&T ILECs' networks, in such a way that it can expect to receive calls that originate on Pacific Bell's network (and thus, originating access service), as well as the other AT&T ILECs' networks. As far as the AT&T ILECs are aware, 88 Connection has not taken steps to prevent the receipt of calls originating on the AT&T ILECs' networks (and in fact, solicits end users generically and without any apparent limitations to avoid the receipt of such calls) or to prevent the receipt of originating access services from the AT&T ILECs. Moreover, 88 Connection has in fact received calls that originate on Pacific Bell's network (as well as the other AT&T ILECs' networks), and has in fact

received originating access services from Pacific Bell (as well as the other AT&T ILECs).

28. 88 Connection's use of locally assigned numbers has prevented the AT&T ILECs from determining that calls that appeared to be local calls were in fact long-distance calls. Because 88 Connection's use of "local" numbers led the AT&T ILECs to believe that the calls were local in nature, the AT&T ILECs routed the calls over local interconnection trunks to other local carriers, and was unable to bill 88 Connection for the applicable access charges required by law. This is precisely the type of "'gaming' of the system" that the FCC sought to prevent in its calling card orders. *In re Regulation of Prepaid Calling Card Services*, ¶ 8.

29. 88 Connection's use of "local" access numbers has prevented the AT&T ILECs from determining the full extent of the access charges 88 Connection was able to evade.

### E.   Federal Court Rulings

30. This case is not the first time the federal courts have been confronted with a prepaid calling card service provider who tried to use "local" access numbers to evade access charges. The United States District Court for the Northern District of Texas has held that "prepaid calling card providers who utilize LANs ... are responsible for access charges" under federal law. Order, *Southwestern Bell Tel. Co. v. IDT Telecom, Inc.*, Case No. 3-09-cv-01268-P (March 9, 2012) at 10. As the district court recognized, the FCC's 2006 order "provides courts with interim rules applicable to 'all prepaid calling card providers.'" *Id.* The court concluded: "it is clear that until the FCC provides further guidance, all prepaid calling card providers are to be treated as telecommunications service providers, and therefore, they are responsible for access charges." *Id.*; *see also id.* at 11 ("[t]he 2006 Order's interim rules state 'all' prepaid calling cards that provide telecommunications services are subject to these

rules. Therefore, the interim rules apply to the traffic at issue in this case."). The Court accordingly granted Southwestern Bell (among other plaintiffs including Pacific Bell) partial summary judgment on liability.

31.  The Court reaffirmed these holdings in a subsequent decision granting partial summary judgment on liability against another prepaid calling card provider. Order, *Southwestern Bell Tel. Co. v. Touch-Tel USA, LLC*, Case No. 3-10-cv-01642-P (Dec. 14, 2012).

32.  In a third case, another federal judge concluded that the FCC said – and meant – that "all" prepaid providers are subject to access charges. In a case against Next-G (another prepaid card provider) very similar to this one, Next-G argued that the FCC's holding applies only "where callers used 1-800 numbers to connect to a prepaid calling card provider's network, not where a LAN [local access number] was used." Order Denying Motion to Dismiss for Lack of Subject Matter Jurisdiction and Alternative Motion to Stay, *Southwestern Bell Tel. Co. v. Next-G Communications, Inc.*, Case No. 3-10-cv-1498-0 (Nov. 22, 2011) at 9. The Next-G Court, however, rejected that theory and denied Next-G's motion to dismiss or stay the suit. The court acknowledged that the FCC began by addressing two types of prepaid calling card services, but also recognized that "[a]fter making this initial determination, the FCC expanded its holding to set forth rules for all prepaid calling card providers." *Id.* at 4. Thus, the Next-G Court held, the rules in the 2006 Order are "applicable to '*all* prepaid calling card providers.'" *Id.* at 15.

## IV.   CLAIMS ASSERTED

### COUNT I
### (VIOLATION OF FEDERAL TARIFFS)

33.  The AT&T ILECs incorporate by reference as though fully set forth herein the allegations of the preceding paragraphs of this Complaint.

34. The AT&T ILECs' rates, terms, and conditions for switched access service charges for interstate and international long-distance calls are set forth in effective tariffs filed with the FCC. Pursuant to those tariffs, for each interstate or international long-distance call originated by an AT&T ILEC end user through 88 Connection's calling card platform, the AT&T ILEC has provided a two-point communications path between 88 Connection's premises and the AT&T ILEC's end user's premises through the AT&T ILEC's network plant. Without that two-point communications path, 88 Connection would not have received any calls originating from the many end-user premises on the AT&T ILECs' networks.

35. 88 Connection has at a minimum constructively ordered access service from the AT&T ILECs' effective tariffs.

36. For the reasons set forth above, and pursuant to the FCC's decisions and the AT&T ILECs' effective federal tariffs, 88 Connection is liable to the AT&T ILECs for its failure to pay switched access service charges on international and interstate interexchange traffic that originated on the AT&T ILECs' networks using 88 Connection's prepaid calling cards.

37. The AT&T ILECs fully performed their relevant obligations under their federal tariffs, except those they was prevented from performing, those they were excused from performing, or those that were waived by 88 Connection's violations as alleged herein.

38. 88 Connection has not paid the AT&T ILECs for interstate and international switched access services in accordance with the AT&T ILECs' effective federal tariffs and the FCC's order on calling card services.

39. 88 Connection has materially violated, and is materially violating, the AT&T ILECs' federal tariffs and the FCC's order on calling card services by avoiding payment of the tariffed rates for the services 88 Connection has used.

40. The AT&T ILECs have been damaged in an amount to be determined by this Court.

41. The AT&T ILECs are entitled to an accounting by 88 Connection to determine the amount of damages, as only 88 Connection knows the full extent of switched access service charges it has avoided through its unlawful actions.

42. Absent injunctive relief, the AT&T ILECs will be irreparably harmed. If 88 Connection is allowed to continue avoiding the payment of access charges, the AT&T ILECs will be forced to initiate a multitude of legal proceedings against 88 Connection to determine the amount of charges 88 Connection should have paid the AT&T ILECs on an ongoing basis.

## **PRAYER FOR RELIEF**

WHEREFORE, the AT&T ILECs requests the following relief:

(a) Declaratory relief finding that 88 Connection is in violation of the FCC's orders regarding access charges and in violation of the AT&T ILECs' effective international and/or interstate tariffs;

(b) Preliminary and permanent injunctive relief enjoining 88 Connection from continuing to engage in the violations complained of;

(c) A full accounting of the number of interexchange minutes improperly disguised as local traffic that should have been treated as long-distance access traffic, and for which 88 Connection should have paid international and/or interstate switched access service charges but evaded payment;

(d)     Monetary damages (or in the alternative, restitution) in the amount of the international and/or interstate switched access service charges (including interest and late payment fees) that the AT&T ILECs are entitled to pursuant to their lawful federal tariffs and which 88 Connection has failed to pay; and

(e)     Such other and further relief for the AT&T ILECs as the Court finds reasonable under the circumstances.

Dated: May 15, 2013                    MAYER BROWN LLP


                                       By:    s/John Nadolenco
                                              John Nadolenco
                                       Attorneys for Plaintiffs

                                       Pacific Bell Telephone Company, BellSouth Telecommunications, LLC, Southwestern Bell Telephone Company, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Inc., Nevada Bell Telephone Company, the Ohio Bell Telephone Company, the Southern New England Telephone Company, and Wisconsin Bell, Inc.

Of Counsel:

Theodore A. Levingston, Esq.
Demetrios G. Metropoulos, Esq.
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606