UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>88 CONNECTION CORPORATION,<br><br>　　　　　Defendant. | Civil No. 13cv1157 L (KSC)<br><br>**ORDER GRANTING IN PART, DENYING IN PART, AND HOLDING IN ABEYANCE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [Doc. 14]** |

　　Pending before the court is Plaintiffs' motion for default judgment against Defendant 88 Connection Corporation. Defendant has not appeared in this action and has not opposed Plaintiffs' motion for default judgment.

　　The motion [Doc. 14] is set for hearing on January 13, 2013. The Court finds this motion suitable for determination on the papers submitted and without oral argument under Civil Local Rule 7.1(d)(1). Accordingly, no appearances are required. For the reasons below, the Court **GRANTS IN PART**, **DENIES IN PART**, and **HOLDS IN ABEYANCE** Plaintiffs' motion for default judgment.

**I.　BACKGROUND**

　　According to the Complaint, Plaintiffs operate telecommunications networks which, *inter*

*alia*, "give other long-distance telecommunications providers access to their networks so that the other long-distance telecommunications providers' customers can initiate calls." (*Compl.* [Doc. 1] ¶ 1.) In return, Plaintiffs are entitled to payment of "switched access charges" pursuant to federal tariffs. (*Id.* ¶ 13.) Plaintiffs allege that Defendant is liable to them for its failure to pay these "switched access charges" on calls that originated on Plaintiffs' networks using Defendant's prepaid calling cards. (*Id.* ¶ 36.)

The Complaint contains only one cause of action, for violation of federal tariffs. (*Compl.* ¶¶ 33-42.) In their prayer for relief, Plaintiffs seek (1) declaratory relief; (2) injunctive relief; (3) an accounting "of interexchange minutes improperly disguised as local traffic that should have been treated as long-distance access traffic, and for which 88 [] should have paid international and/or interstate switched access service charged but evaded payment"; and (4) monetary damages or restitution "in the amount of the international and/or interstate switched access service charges (including interest and late payment fees) that the [Plaintiffs] are entitled to pursuant to their lawful federal tariffs and which 88 [] has failed to pay." (*Id.* 13-14.) Plaintiffs now move for default judgment.

**II.    LEGAL STANDARD**

Under to Rule 55(b), a court may order default judgment following the entry of default by the Clerk of the Court. After default has been entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). An entry of default does not automatically entitle a plaintiff to a court-ordered judgment. *See Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). Rather, granting or denying relief is within the court's discretion. *See id*.

In determining whether to grant a default judgment, the trial court should consider the seven factors articulated by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal

Rules of Civil Procedure favoring decisions on the merits.
*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In applying these Eitel factors, the factual allegations of the complaint are taken as true, except those relating to the amount of damages. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.1977).

When default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c): "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

### III. DISCUSSION

#### A. Default Judgment is Warranted

The summons and complaint were served on Defendant by personal service on May 16, 2013 [Doc. 4]; however, Defendant failed to answer or otherwise appear in the action. Nor did Defendant respond to Plaintiffs' request for entry of default, which was served on June 24, 2013. [Doc. 5.] Default was entered against Defendant on June 25, 2013. [Doc. 6.] Although served, Defendant did not respond to Plaintiffs motion for default judgment (*Proof of Service* [Doc. 13-10]) or amended motion for default judgment (*Proof of Service* [Doc. 14-11]). The court finds Plaintiffs have satisfied the procedural requirements to obtain a default judgment by showing that Defendant was properly served with process and that Defendant is not a minor, incompetent or in military service. (*See Nadolenco Decl.* [Doc. 5-1].)

As noted above, a party is not automatically entitled to default judgment after entry of default. Plaintiffs have not discussed any of the *Eitel* factors in this motion. Nonetheless, the Court can construe Plaintiffs' motion as addressing the *Eitel* factors, and will review Plaintiffs' singular claim for violation of federal tariffs accordingly.

With respect to the first *Eitel* factor, Plaintiffs would be prejudiced if they are unable to recover switched access charges that they are entitled to merely because Defendant refuses to defend this action. Absent entry of a default judgment, Plaintiffs will be deprived of a remedy for the damages caused by Defendant's violations.

Under the second and third *Eitel* factors, the court may consider the merits of the

plaintiff's substantive claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. These two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002), *citing Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

To state a cause of action for collection of charges pursuant to a tariff, Plaintiffs must plead (1) that they operated under a federally filed tariff and (2) that they provided services to the customer pursuant to that tariff. *Advamtel, LLC v. AT&T Corp*, 118 F. Supp. 2d 680, 683 (E.D. Va. 2000); *North County Communications Corp. v. Verizon Global Networks, Inc.*, 685 F. Supp. 2d 1112, 1121 (S.D. Cal. 2010). Plaintiffs adequately plead their tariff collection claim by alleging that they operated under a federally filed tariff and that they provided services to Defendant pursuant to that tariff.[1] (*Compl.* ¶¶ 13, 22-24, 33-42).

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of defendant's conduct. *Eitel*, 782 F.2d at 1471-72. Defendants owe Plaintiffs a substantial amount of money, more than $4,000,000. (*Mot. Default J.* 12; *infra* Part III.B.1.)

As to the fifth factor, on entry of default all well-pleaded facts in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18. Here, Plaintiffs filed a complaint alleging the facts necessary to establish their entitlement to tariff collection. Defendant has been given a great deal of time to answer the complaint and deny any allegations contained therein; however, Defendant has failed to do so.

The sixth *Eitel* factor considers the possibility that default resulted from excusable neglect. "Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered." *Castworld Products, Inc.*, 219 F.R.D. at 500-01 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Here, the possibility that default resulted from excusable neglect appears remote. Defendant was

---

[1] Defendant's failure to answer constitutes an admission to the averments contained in the Complaint under Federal Rule of Civil Procedure 8(d), so the Court accepts these allegations as true.

personally served with the summons and Complaint on May 16, 2013, but has failed to answer or otherwise respond to the Complaint and has not opposed this motion.

Last, the Court considers the policy favoring decisions on the merits whenever reasonably possible. *Eitel*, 728 F.2d at 1472. However, the mere existence of Rule 55(b) indicates that this policy, standing alone, is not dispositive. *Pepsico*, 238 F. Supp. 2d at 1177. Defendant's failure to participate in this action makes a decision on the merits impractical, if not impossible. Furthermore, allowing Defendant to halt the adversary process would prejudice the diligent party by causing interminable delay and continued uncertainty as to its rights. *See H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (9th Cir. 1970). Thus, the seventh *Eitel* factor does not preclude the Court from entering default judgment against defendant.

The possibility of prejudice to the Plaintiffs, the merits of Plaintiffs' substantive tariff collection claim, the sufficiency of the Complaint as to that claim, and the sum of money at stake in the action weigh in favor of Plaintiffs. Because Defendant is in default, it has not presented any argument or evidence demonstrating the possibility of a dispute concerning material facts or the possibility of any defense. Defendant also has not presented any argument or evidence that the entry of default was due to any excusable neglect. These factors therefore also favor Plaintiff. Therefore, in light of the foregoing, the Court finds that default judgment is warranted.

### B.     The Terms of the Judgment

After determining that entry of default judgment is warranted, the court must next determine the terms of the judgment. Where damages are liquidated, *i.e.*, capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means.

Plaintiffs seek damages for "(1) originating switched access charges from January 2007–August 31, 2013 and (2) lost interest on those charges." (*Mot. Default J.* 16.) In addition, Plaintiffs seek various forms of injunctive relief. (*Id.*14-16.)

### 1.   Damages

Plaintiffs seek $4,013,459 in damages, which includes originating switched access charges from January 2007 until August 31, 2013 and interest thereon. (*Mot. Default. J.* 8-12.) In support of their damages claim, Plaintiffs submit evidence in the form of declarations by Amie Boyce, an employee in Plaintiffs' Finance Department, and Dr. Debra Aron[2], a principal at Navigant Economics and Adjunct Associate Professor at Northwestern University.

47 C.F.R. §§ 69 *et seq.* govern the access charges at issue here, providing both definitions of relevant terms and methods for calculating the access charges. In order to calculate access charges, one must first calculate the amount of time subject to an access charge, or "access minutes." 47 C.F.R. §69.2(a). Once the access minutes have been calculated, this number must be multiplied by the price of those services to yield the tariff owed. This calculus, in this case, is complicated by the facts that (1) the number of "access minutes" that Defendant received from Plaintiffs is difficult to precisely calculate and (2) the price for those services varies for each call. Nonetheless, the Court is satisfied that Plaintiffs have properly estimated[3] these figures.

To identify the "access minutes" that Defendant received, Plaintiffs had to identify Defendant's long-distance calls that Plaintiffs originated. To do so, Plaintiffs executed their own investigation and received subpoena responses from relevant parties that established over 4,200 "local access numbers" or "LANs" that Defendant was using to originate long-distance calls. (*Boyce Decl.* [Doc. 14-6] ¶¶ 22-27.) With these LANs identified, Plaintiffs were able to search their electronic call records for all calls originating on their networks that were dialed to Defendant's LANs. (*Id.* ¶ 28.) Plaintiffs' only recorded the "conversation minutes" for each call–the time the end users at each end were connected. (*Id.* ¶ 35; *Aron Decl.* [Doc. 14-4] ¶ 29.) However, Plaintiffs are entitled to access charges for the "conversation minutes" as well as the

---

[2] Plaintiffs submit Dr. Aron's declaration in support of their damages calculation. (*Aron Decl.* ¶ 6.) Dr. Aron appears to be qualified to make such calculations. (*Id.* ¶¶ 2-4, Ex. 1.)

[3] "[A] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." *DSPT Int'l, Inc. V. Nahum*, 624 F.3d 1213, 1223 (9th Cir. 2010) (quoting *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927)).

time needed to connect the call. *See* 47 C.F.R. § 69.2(a)-(b). To convert the eligible "conversation minutes" to "access minutes," Plaintiffs employed a 1.07 multiplier, which is the same that the FCC uses in its reporting. (*Aron Decl.* ¶ 30.) According to this methodology, Plaintiffs estimate that Defendant received 443,648,356 access minutes of originating switched access services from Plaintiffs. (*Id.* ¶ 28, Table 1.)

Various elements go in to the calculation of the "price" for "access minutes." (*See Aron Decl.* ¶¶ 30-32.) Generally, Plaintiffs record these elements for each long-distance call. (*Id.* ¶ 31.) However, because the calls at issue here appeared to be local calls, none of the relevant elements were recorded, rendering it impossible to calculate the exact price of the calls. (*Id.* ¶¶ 30-31.) However, Plaintiffs have provided a conservative "price per minute" estimate by calculating the Plaintiffs' average price per minute charge to "interexchange carriers" or "IXCs" like Defendant. (*See id.* ¶¶ 33-34.) These average prices were calculated using a methodology directed by the FCC. (*Id.* ¶ 34.) By multiplying the "access minutes" by the average "price per minute," Dr. Aron has determined that Defendant should have paid $3,189,688 to Plaintiffs over the relevant time period. (*Id.* ¶¶ 43-44.)

Plaintiffs are also entitled to interest. *Garrett v. Time-D.C., Inc.,* 502 F.2d 627, 629-30 (9th Cir. 1974). Dr. Aron has computed interest owed to Plaintiffs using California's constitutional rate of 7 percent.[4] (*Aron Decl.* ¶ 48; Cal. Const. Art. XV § 1.) Including interest, Dr. Aron estimates that Plaintiffs are owed $4,013,459. (*Aron Decl.* ¶¶ 48-49, Table 4.) Defendant has not paid any of these charges, so the entire amount is due. (*Boyce Decl.* ¶ 9.)

In light of the foregoing undisputed evidence, the Court is satisfied that Plaintiffs have shown that they are entitled to damages and interest in the amount of $4,013,459.

### 2. Injunctive Relief

A party is entitled to permanent injunctive relief if it can show (1) an irreparable injury; (2) an inadequate remedy at law to compensate the injury; (3) that an injunction is warranted

---

[4] The vast majority of Plaintiffs' claims relate to calls originating in California. (*Aron Decl.* ¶28, Table 1.)

Case 3:13-cv-01157-L-KSC   Document 15   Filed 01/03/14   Page 8 of 8

after balancing the hardships between the parties; and (4) the public interest would not be harmed by granting the injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

      Plaintiffs seek various forms of injunctive relief. (*Compl.* 13.) However, Plaintiffs have provided no substantive argument under the *eBay* framework as to why they are entitled to such relief above and beyond their damages award detailed above. Indeed, the Supreme Court has cautioned courts that departing from this four-factor test in granting or denying injunctive relief is reversible error. *See eBay*, 547 U.S. at 393-94. Therefore, to the extent that Plaintiffs request injunctive relief, their motion for default judgment is **DENIED WITHOUT PREJUDICE** and **HELD IN ABEYANCE**.

### IV. CONCLUSION

      Accordingly, Plaintiffs' motion for default judgment is **GRANTED IN PART** and **DENIED IN PART**. In light of this, the Court **ORDERS AS FOLLOWS**:

    1. Plaintiffs' motion, to the extent that it seeks damages in the amount of $4,013,459, is **GRANTED**.

    2. Plaintiffs motion, to the extent it seeks injunctive relief, is **DENIED WITHOUT PREJUDICE** and **HELD IN ABEYANCE** until **January 30, 2014**. Plaintiffs may file a supplemental brief, not to exceed 10 pages, indicating what types of injunctive relief they seek and why they believe they are entitled to such relief. If Plaintiffs do not file such supplemental briefing on or before **January 30, 2014**, Plaintiffs' claims for injunctive relief shall be considered denied with prejudice.

    3. The hearing scheduled for this motion on January 13, 2014 is **VACATED**.

**IT IS SO ORDERED.**

DATED: January 3, 2014

                                         */s/ M. James Lorenz*
                                         M. James Lorenz
                                         United States District Court Judge

8

13cv1157