1  MAYER BROWN LLP
   MATTHEW H. MARMOLEJO (SBN 242964)
2    *mmarmolejo@mayerbrown.com*
   350 South Grand Avenue, 25th Floor
3  Los Angeles, CA 90071
   Telephone:  (213) 229-9500
4  Facsimile:  (213) 625-0248

5  Attorneys for Plaintiffs
   Pacific Bell Telephone Company, BellSouth
6  Telecommunications, LLC, Southwestern Bell
   Telephone Company, Illinois Bell Telephone
7  Company, Indiana Bell Telephone Company, Inc.,
   Nevada Bell Telephone Company, The Ohio Bell
8  Telephone Company, and Wisconsin Bell, Inc.

9

                **UNITED STATES DISTRICT COURT**
10
                **SOUTHERN DISTRICT OF CALIFORNIA**
11

12 | PACIFIC BELL TELEPHONE | Case No. 13-cv-01157-L-KSC |
   COMPANY, BELLSOUTH
13 TELECOMMUNICATIONS, LLC,        **PLAINTIFFS' MEMORANDUM**
   SOUTHWESTERN BELL               **OF POINTS AND AUTHORITIES**
14 TELEPHONE COMPANY, ILLINOIS     **IN SUPPORT OF MOTION TO**
   BELL TELEPHONE COMPANY,         **AMEND DEFAULT JUDGMENT**
15 INDIANA BELL TELEPHONE          **TO ADD GANG ZHAO, a/k/a**
   COMPANY, INCORPORATED,          **CHARLIE ZHAO, AS AN**
16 NEVADA BELL TELEPHONE           **ADDITIONAL JUDGMENT**
   COMPANY, THE OHIO BELL          **DEBTOR**
17 TELEPHONE COMPANY, AND
   WISCONSIN BELL, INC.,
18                                 The Hon. M. James Lorenz
                  Plaintiffs,
19                                 Date:  Sept. 19, 2016
        v.                         Time:  10:30 a.m.
20                                 Courtroom 5B
   88 CONNECTION CORPORATION,
21                                 **No oral argument of this matter will**
                  Defendant.       **be heard unless requested by the**
22                                 **Court.**

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2                                                                          **Page**

3

4  **I.    INTRODUCTION** ........................................................................... 1

5  **II.   BACKGROUND** .............................................................................. 1

6         A.    2013 Lawsuit Against 88 Connection and Plaintiffs' Contacts
               with Zhao During Lawsuit ................................................... 1

7         B.    The AT&T ILECs' Attempts to Satisfy the Judgment ................ 3

8         C.    Zhao's Debtor Examination Testimony ................................... 4

9         D.    2015 Complaint in Northern District of California ................... 6

10 **III.  LEGAL STANDARD** ...................................................................... 7

11 **IV.   ARGUMENT** ................................................................................ 7

12        A.    Zhao Is the Alter-Ego of 88 Connection ................................ 8

13              1.    Unity of Interest and Ownership ............................... 8

14                    a.   Treatment by an Individual of the Assets of the
                          Corporation as His Own ................................... 9

15
16                    b.   Sole Ownership Of All Of The Stock In A
                          Corporation By One Individual ......................... 9

17                    c.   Holding Out By An Individual That He Is
                          Personally Liable For The Debts Of The
18                        Corporation .................................................... 9

19                    d.   Failure To Maintain Minutes Or Adequate
                          Corporate Records, And The Confusion Of The
20                        Records Of Separate Entities .......................... 10

21                    e.   Failure To Adequately Capitalize A Corporation /
22                        Total Absence Of Corporate Assets, And
                          Undercapitalization ...................................... 10

23              2.    Inequitable Result .................................................. 11
24
25        B.    Zhao Had Control of the Litigation and Had Ample Occasion to
               Diligently Conduct the Litigation ....................................... 13

26 **V.    CONCLUSION** ............................................................................ 16

27

28

i

PLAINTIFFS' MEMO OF P's & A's ISO MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG
ZHAO a/k/a CHARLIE ZHAO AS AN ADDITIONAL JUDGMENT DEBTOR; 13-CV-01157-L-KSC
720845403

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank of Montreal v. SK Foods, LLC*,
   476 B.R. 588 (N.D. Cal. 2012)...........................................................................7

*Calvin Brian International Company v. Gustto, Inc.*,
   No. 13-cv-0218-GPC-BLM, 2014 WL 3548143 (S.D. Cal. July 17,
   2014) ................................................................................................................. 14

*Communist Party v. 522 Valencia, Inc.*,
   35 Cal. App. 4th 980 (1995) .............................................................................. 8

*Craigslist, Inc. v. Mesiab*,
   No. 08-cv-05069-CW-MEJ, 2010 WL 5300883 (N.D. Cal. 2010)............. 14, 15

*Greenspan v. LADT, LLC*,
   191 Cal.App.4th 486 (2011) ........................................................................... 7, 8

*In re Levander*,
   180 F.3d 1114 (9th Cir. 1999) ........................................................................... 7

*Nunez v. Holder*
   594 F.3d 1124 (9th Cir. 2010) ......................................................................... 15

*Oceans II, Inc. v. Skinnervision, Inc.*,
   No. 12-cv-06867-CAS, 2015 WL 4484208 (C.D. Cal. July 20,
   2015) ................................................................................................................ 15

*Oddenino & Gaule v. United Fin. Grp. of Illinois*,
   No. 98-55431, 1999 WL 1011910 (9th Cir. Nov. 4, 1999) .............................. 11

*Pacific Bell Telephone Co., et al. v. 88 Connection Corporation, et al.*,
   No. 15-cv-04554-LB, 2016 WL 3257656 (N.D. Cal. June 14,
   2016) ............................................................................................................. 6, 13

*Politte v. United States*,
   No. 07-cv-1950-AJB, 2012 WL 965996 (S.D. Cal. March 21,
   2012) ............................................................................................................... 11

ii

PLAINTIFFS' MEMO OF P's & A's ISO MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG
ZHAO a/k/a CHARLIE ZHAO AS AN ADDITIONAL JUDGMENT DEBTOR; 13-CV-01157-L-KSC
720845403

*Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership*,
   222 Cal.App.4th 811 (2013) ................................................................ 12

*RRX Indus., Inc. v. Lab-Con, Inc.*,
   772 F.2d 543 (9th Cir. 1985) ....................................................... 11, 12

*Shanghai Minguang Intern. Group Co., Ltd. v. Yang*,
   No. E044331, 2008 WL 4004697 (Aug. 29, 2008) ............................. 15

*The Universal Church, Inc. v. Standard Construction Co. of San
   Francisco, Inc., et al.*,
   No. 14-cv-04568-RS, 2015 WL 7753211 (N.D. Cal. Dec. 2, 2015) ............... 12

*Zoran Corp. v. Chen*,
   185 Cal. App. 4th 799 (2010) .......................................................... ii, 8

**Statutes**

California Code of Civil Procedure Section 187 ............................... 1, 7, 15

iii

PLAINTIFFS' MEMO OF P's & A's ISO MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG
ZHAO a/k/a CHARLIE ZHAO AS AN ADDITIONAL JUDGMENT DEBTOR; 13-CV-01157-L-KSC
720845403

## I.   INTRODUCTION

To prevent injustice, Section 187 of the California Code of Civil Procedure allows courts to amend judgments to add nonparties that were alter egos of the defendant and controlled the underlying litigation.  Here, the interests of justice clearly weigh in favor of amending the default judgment against 88 Connection Corporation ("88 Connection") to add its sole shareholder and principal, Gang Zhao, a/k/a Charlie Zhao ("Zhao").  Zhao admitted to having complete control over the corporation and, moreover, knew that 88 Connection was undercapitalized even at the time of the underlying litigation.  Zhao also had direct notice of the underlying litigation and ample opportunity to conduct a defense, but strategically chose not to.  Under these circumstances, allowing Zhao to avoid the ramifications of the underlying judgment against 88 Connection would promote injustice.  For that reason, this motion should be granted.

## II.   BACKGROUND

### A.   2013 Lawsuit Against 88 Connection and Plaintiffs' Contacts with Zhao During Lawsuit

On May 15, 2013, Plaintiffs Pacific Bell Telephone Company, BellSouth Telecommunications, LLC, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Incorporated, Nevada Bell Telephone Company, The Ohio Bell Telephone Company, Southwestern Bell Telephone Company, and Wisconsin Bell, Inc. (the "AT&T Incumbent Local Exchange Carriers" or "AT&T ILECs")[1] filed a complaint against 88 Connection in this Court (the "2013 Complaint").  *Pac. Bell Tel. Co., et al. v. 88 Connection Corp.*, No. 13-cv-1157-L-KSC (S.D. Cal. May 15, 2013) ("*Pac. Bell I*"), ECF No. 1.  The 2013 Complaint alleged that

---

[1] The plaintiffs in this lawsuit also included The Southern New England Telephone Company ("SNET"), which operated in Connecticut.  Since that time, SNET was acquired by Frontier Communications Corporation and is no longer affiliated with the AT&T ILECs and is not a party to this motion.

88 Connection violated federal tariffs by not paying certain "switched access charges" for using the AT&T ILECs' networks. *Id.* The 2013 Complaint did not name Zhao as a defendant.

In addition to his role as 88 Connection's President and its only corporate officer, Zhao was designated as 88 Connection's Registered Agent for service of process and, in that capacity, he was personally served with the 2013 Complaint on May 16, 2013. *Id.* at ECF No. 4.; Declaration of Mimi MacDonald In Support of Plaintiff's Motion to Amend Default Judgment to Add Gang Zhao, a/k/a Charlie Zhao, as an Additional Judgment Debtor ("MacDonald Decl."), filed concurrently herewith, Ex. C at 43:10-44:10, 81:18-82:3.

Throughout the course of this action, the AT&T ILECs sent numerous pleadings to Zhao, at a number of different addresses, all via overnight mail. MacDonald Decl. at ¶ 4. Finally, on August 21, 2014 (after several efforts to call Zhao by telephone), an attorney for the AT&T ILECs (Ms. Mimi MacDonald) spoke directly with Zhao by telephone. *Id.* at ¶ 5. On that call, Ms. MacDonald described the litigation to Zhao, told him that the Court had granted in part the AT&T ILECs' Motion for Default Judgment and subsequently granted AT&T ILECs' Motion for Permanent Injunction against 88 Connection, and told Zhao that the AT&T ILECs intended to file a motion on August 29, 2014, requesting that the Court enter judgment against 88 Connection pursuant to Rule 58(a) of the Federal Rules of Civil Procedure. *Id.* at ¶¶ 5-6; Ex. B at ¶ 7.

During that same telephone conversation, Zhao communicated his belief that 88 Connection did not owe the AT&T ILECs any access charges, which he contended were attributable to a predecessor of 88 Connection, and, moreover, claimed that his counsel told him that all of the charges that 88 Connection owes had already been paid by the provider from whom it received local phone numbers. MacDonald Decl. at ¶ 7. Zhao also indicated he would have to call that same

counsel for further advice. *Id.* Ms. MacDonald informed Zhao that if she did not hear from him or his counsel on or before August 28, 2014, the AT&T ILECs intended to request that the Court enter judgment against 88 Connection. *Id.*

Neither Ms. MacDonald nor anyone else at the AT&T ILECs were ever contacted by Zhao, his attorney, or any other representative of 88 Connection. *Id.* at ¶ 8. On August 29, 2014, Ms. MacDonald filed a declaration with this Court that detailed the above interactions with Zhao. *Id.* at ¶ 4, Ex. B.

Ultimately, 88 Connection did not file any response and, on September 29, 2014, default judgment on the 2013 Complaint was entered against 88 Connection in the amount of $4,013,459.00. *Pac. Bell I*, ECF No. 22.

### B. The AT&T ILECs' Attempts to Satisfy the Judgment

As part of its efforts to satisfy the judgment, the AT&T ILECs registered the judgment on the 2013 Complaint in the Central District of California in December 2014, and an abstract of judgment was issued on February 3, 2015. MacDonald Decl. at ¶ 11. Furthermore, the AT&T ILECs conducted (through an investigative services firm) a nationwide bank, savings, and checking account search related to 88 Connection. *Id.* at ¶ 10. In addition, the AT&T ILECs further directed outside counsel to serve writs of execution and subpoenas (e.g., for banking records) on numerous entities that were identified as being reasonably likely to have information related to 88 Connection's accounts and assets, and such levy and recovery efforts began in approximately March of 2015. *Id.* at ¶¶ 10-14. Certain records were produced through this process, including banking records from JP Morgan Chase Bank, N.A. that related to 88 Connection. *Id.* at ¶ 14.

Despite these significant efforts, to date, the AT&T ILECs have only recovered a small fraction of the outstanding judgment. *Id.* at ¶ 15.

PLAINTIFFS' MEMO OF P's & A's ISO MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG
ZHAO a/k/a CHARLIE ZHAO AS AN ADDITIONAL JUDGMENT DEBTOR; 13-CV-01157-L-KSC
720845403

### C.     Zhao's Debtor Examination Testimony

The AT&T ILECs also registered the judgment in the Northern District Court of California on May 15, 2015.  *Pacific Bell Telephone Company, et al. v. 88 Connection Corporation*, No. 15-mc-80135-LB (N.D. Cal. May 15, 2015) ("*Pac. Bell II*"), ECF No. 1.

In connection with the enforcement of the judgment in that action (*i.e.*, *Pac. Bell II*), Zhao submitted to a debtor's examination on September 23, 2015.  (*Id.*, ECF No. 15).  Throughout the course of the examination, Zhao refused to answer many of the questions posed.  MacDonald Decl. Ex. C at  216:3 – 218:20 (question regarding whether 88 Connection was adequately capitalized); 5-9 (listing all questions that Zhao refused to answer, including any questions related to his personal assets).  Despite his refusal to answer many of the questions posed, his testimony confirmed the following:

- For the majority of 88 Connection's existence and since 2011, Zhao was and currently remains the sole shareholder of 88 Connection.  (MacDonald Decl. Ex. C at 112:21-113:21).

- At least three of Zhao's assets were used for both personal and business purposes: a Honda Odyssey used for personal purposes and for transporting distributors and vendors (MacDonald Decl. Ex. C at 19:17 – 20:14); his personal email address – charliezhao88@gmail.com (MacDonald Decl. Ex. C at 244:7-16); and his personal cell phone number (MacDonald Decl. Ex. C at 245:4-8).

- As president and the only officer of 88 Connection (MacDonald Decl. Ex. C at 43:10-44:10, 81:18-82:30), Zhao admitted that 88 Connection did not recognize commonplace corporate formalities; he claimed not to know whether 88 Connection operated with a Board of Directors (MacDonald

4

Decl. Ex. C at 85:16-18), and he explained that no officer elections ever had been held.  (MacDonald Decl. Ex. C at 82:22-83:2).

- Zhao also testified that, as of 2011, he became and is now the sole owner of all of 88 Connection's stock.  (MacDonald Decl. Ex. C at 112:21-113:21). In addition, Zhao claimed not to remember how he obtained stock in the corporation, including whether he paid for the stock (MacDonald Decl. Ex. C at 114:20-126:6).

- 88 Connection's business address, consistent with information registered with the Secretary of State, was 2525 Van Ness Avenue in San Francisco. (MacDonald Decl. Ex. C at 79:17-80:8).  In April or May 2015, after failing to pay rent, Zhao chose to abandon the premises, leaving at the address "the whole desk computer" and the "whole server" containing 88 Connection's business and accounting records, as well as numerous other corporate assets belong to 88 Connection—including switches, other servers, and routers. MacDonald Decl. Ex. C at 139-141.  Zhao stated that he has "no idea" what happened to those assets as he never returned to that address.  *Id.* at 142:1-9.

- Zhao was liable for 88 Connection's Chase credit card, which he personally guaranteed.  (MacDonald Decl. Ex. C at 210:22-211:18).

- In about early 2013, Zhao realized that the corporation was going to have higher liabilities than it was going to have cash.  (MacDonald Decl. Ex. C at 220:12-15).   Zhao stated that 88 Connection has no cash assets currently. (MacDonald Decl. Ex. C at 213:11-16).  The balance of its ICBC account is "almost zero" (MacDonald Decl. Ex. C at 189:8-9); its East West Bank account contains less than one hundred dollars (MacDonald Decl. Ex. C at 192:10-16); and, in addition to the sums it owes the AT&T ILECs, 88 Connection also owes money to PayPal (MacDonald Decl. Ex. C at 243:11-17).

5

- Chase Bank statements shown to Zhao indicate that in January 2011, February 2011, and December 2012, 88 Connection's liabilities exceeded its assets, though Zhao claimed not to know whether this was actually the case. (MacDonald Decl. Ex. C at 277:10-279:11; MacDonald Decl. Ex. D (Chase Bank Statements).

**D.   2015 Complaint in Northern District of California**

On October 2, 2015, the AT&T ILECs filed another complaint (the "2015 Complaint"), alleging similar claims (i.e., violations of federal tariffs by not paying tariffed "switched access charges" for using the AT&T ILECs' networks to originate long-distance calls), this time against both Zhao and 88 Connection.  The 2015 Complaint seeks damages incurred since September 1, 2013 (the first day after the time frame covered by the 2014 Default Judgment) as a result of Defendants' continuing failure to pay for "switched access service" charges due to the AT&T ILECs pursuant to federal tariffs.  (ECF No. 1 at 2:10-13.)

In that case, on March 14, 2016, the court found that Zhao was "continu[ing] to evade [Plaintiffs]'efforts at service" and granted Plaintiffs leave to serve the Complaint on Zhao by email.  On April 16, 2016, both Defendants named in the 2015 Complaint—88 Connection and Zhao—filed a motion to dismiss, principally arguing that insufficient alter ego allegations had been made, and also confirming that "88 Connection had ceased doing business."  (Dkt. 19 at 7.)  On June 14, 2016, the United States District Court for the Northern District of California denied the motion to dismiss, holding that the AT&T ILECs had sufficiently alleged facts to support alter ego allegations as to that Complaint.  *Pacific Bell Telephone Co., et al. v. 88 Connection Corporation, et al.*, No. 15-cv-04554-LB, 2016 WL 3257656, (N.D. Cal. June 14, 2016).

## III.   LEGAL STANDARD

Courts have long recognized the authority to amend a judgment to add a nonparty alter ego as a judgment debtor under Cal. Code. Civ. Proc. § 187 and, as a general rule, a court "'may amend its judgment at any time so that the judgment will properly designate the real defendants.'"  *Greenspan v. LADT, LLC*, 191 Cal.App.4th 486, 508 (2011) (quoting *Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conf. Center Bd.* (1996) 41 Cal.App.4th 1551, 1554-1555)); *see also In re Levander*, 180 F.3d 1114 (9th Cir. 1999) (holding that federal courts are empowered under Federal Rule of Civil Procedure 69(a) to rely on state law to add judgment debtors consistent with the practice and procedure of the state in which the district court sits and applying Cal. Code. Civ. Proc. § 187).

In particular, in order to add a new party to an existing judgment, "[t]he judgment-creditor must show both (1) that the party to be added satisfies the alter ego criteria…, and (2) that the new party had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability involved." *Bank of Montreal v. SK Foods,* LLC, 476 B.R. 588, 597 (N.D. Cal. 2012) (citing *NEC Electronics Inc. v. Hurt*, 208 Cal. App. 3d 772, 778-79 (1989)) (applying California law), *aff'd sub nom., Bank of Montreal v. Salyer*, 599 Fed. Appx. 706 (9th Cir. 2015).

## IV.   ARGUMENT

The evidence—including Zhao's recent testimony in September 2015— establishes that Zhao is both (1) the alter ego for 88 Connection and (2) had control and occasion to defend the underlying litigation but strategically chose not to respond.  Accordingly, this Court should allow the default judgment to be amended to include Zhao as a judgment debtor, especially given that "'[t]he greatest liberality is to be encouraged in the allowance of such amendments in order to see

7

1  that justice is done.'"   *Greenspan*, 191 Cal.App.4th at 508 (quoting *Carr v.*
2  *Barnabey's Hotel Corp*. (1994) 23 Cal.App.4th 14, 20)).

3  **A.   Zhao Is the Alter-Ego of 88 Connection.**

4  The alter-ego doctrine applies where "(1) there is such a unity of interest and
5  ownership between the corporation and the individual…controlling it that their
6  personalities no longer exist, and (2) failure to disregard the corporate entity would
7  sanction a fraud or promote injustice." *Communist Party v. 522 Valencia, Inc.*, 35
8  Cal. App. 4th 980, 993 (1995) (citing *Mesler v. Bragg Management Co.,* 39 Cal.3d
9  290, 300 (1985); *Automotriz Del Golfo De California S. A. De C. V. v. Resnick*, 47
10  Cal.2d 792, 796 (1957); *Minifie v. Rowley*, 187 Cal. 481, 487 (1921); Shapoff v.
11  Scull, 222 Cal.App.3d 1457, 1469-1470 (1990)).

12  **1.   Unity of Interest and Ownership**

13  To determine whether an individual and a corporation share such a unity of
14  interest and ownership that the personalities of the two are no longer separate,
15  courts have considered the following, non-exhaustive list of factors:

16      [1] [c]ommingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets
17      to other than corporate uses;
    [2] the treatment by an individual of the assets of the corporation as his own;
18      [3] the failure to obtain authority to issue stock or to subscribe to or issue the same;
19      [4] the holding out by an individual that he is personally liable for the debts of the corporation;
20      [5] the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities;
21      …
    [9] sole ownership of all of the stock in a corporation by one individual or
22      the members of a family;
23      …
    [12] the failure to adequately capitalize a corporation;
    [13] the total absence of corporate assets, and undercapitalization;
24      ….

25  *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811-12 (2010).  The relevant criteria
26  are analyzed below.

27

28

8

### a. Treatment by an Individual of the Assets of the Corporation as His Own

Although Zhao refused to answer numerous questions at his September 2015 debtor examination on this subject, he testified that at least three assets were used for both personal and business purposes: a Honda Odyssey used for personal purposes and for transporting distributors and vendors (MacDonald Decl. Ex. C at 19:17 – 20:14); personal email address – charliezhao88@gmail.com (MacDonald Decl. Ex. C at 244:7-16); and personal cell phone number (MacDonald Decl. Ex. C at 245:4-8). In addition, Zhao deliberately chose to abandon numerous assets (including its main computer and server) belonging to 88 Connection at a former business address, because *Zhao* failed to pay the rent. MacDonald Decl. Ex. C at 139-142. His cavalier decision to simply "leave" such assets without any attempt to retrieve them further demonstrates that he treated 88 Connection's assets as his own. *Id.* at 140:1-2; 141:16-25.

### b. Sole Ownership Of All Of The Stock In A Corporation By One Individual

Zhao testified that, as of 2011, he became and is now the sole owner of all of 88 Connection's stock. (MacDonald Decl. Ex. C at 112:21-113:21). In addition, Zhao claimed not to remember how he obtained stock in the corporation, including whether he paid for the stock (MacDonald Decl. Ex. C at 114:20-126:6). At a very minimum, this raises serious questions about whether stock was even appropriately issued.

### c. Holding Out By An Individual That He Is Personally Liable For The Debts Of The Corporation

Zhao testified that, although he generally did not hold himself out as personally liable for the corporation's debts, he was liable for the corporation's Chase credit card, which he personally guaranteed. (MacDonald Decl. Ex. C at 210:22-211:18).

9

d.   Failure To Maintain Minutes Or Adequate Corporate Records, And The Confusion Of The Records Of Separate Entities

Zhao was and is the president and the only officer of 88 Connection. (MacDonald Decl. Ex. C at 43:10-44:10, 81:18-23).  He nonetheless claimed not to know whether there is a Board of Directors.  (*Id.* at 85:16-18).  He also stated that there were no officer elections in 88 Connection.  (*Id.* at 82:22-83:2).  As 88 Connection's president and sole corporate officer, Zhao's claimed ignorance of any corporate formalities suggests that corporate records or minutes were not maintained at all, and certainly not adequately.  In addition, as noted above, any corporate records were deliberately abandoned by Zhao at 88 Connection's former business address, and he cannot account for their whereabouts or whether they still even exist. MacDonald Decl. Ex. C at 139-142.  Needless to say, this further reflects a total failure to maintain corporate records.

e.   Failure To Adequately Capitalize A Corporation / Total Absence Of Corporate Assets, And Undercapitalization

Zhao's testimony demonstrates that 88 Connection was not adequately capitalized.  Throughout its existence, 88 Connection's only working capital has been whatever it was bringing in from selling calling cards.  (MacDonald Decl. Ex. C at 215:25-216:2).  In fact, Zhao admitted to realizing, **beginning in about 2013**, that the corporation was going to have higher liabilities than it was going to have cash.  (MacDonald Decl. Ex. C at 220:12-15).  Moreover, Zhao claims that the business has no cash assets currently.  (MacDonald Decl. Ex. C at 213:11-16).  The balance of the corporation's ICBC account is "almost zero" (MacDonald Decl. Ex. C at 189:8-9); its East West Bank account contains less than one hundred dollars (MacDonald Decl. Ex. C at 192:10-16); and it owes money to PayPal (MacDonald Decl. Ex. C at 243:11-17).  Further, 88 Connection's JP Morgan Chase Bank, N.A. statements show that, **in January 2011, February 2011, and December 2012, its liabilities exceeded its assets**.  (MacDonald Decl. Ex. C at 277:10-279:11;

10

MacDonald Decl. Ex. D [Chase Bank statements]).  Additionally, the company's accounts payable exceeds its accounts receivable.  88 Connection is currently owed "at least a hundred thousand dollars" from distributors (MacDonald Decl. Ex. C at 204:6-205:5), while it owes "different entities somewhere in the 200 to 300,000 price range."  (MacDonald Decl. Ex. C at 210:5-10).   In recent filings in the Northern District of California case, both 88 Connection and Zhao confirmed that "88 Connection had ceased doing business."  (*Pac. Bell II,* Dkt. 19 at 7).

*          *          *

Many of the relevant (and non-exhaustive) factors looked at by courts to determine alter ego liability weigh heavily in favor of finding that Zhao is the alter ego of 88 Connection, including, among others, that he has been the sole shareholder of 88 Connection for most of its existence and knew, at least as far back as 2013 (when he was served with process as the agent for 88 Connection), that the company was severely undercapitalized, and had been for years.

### 2.    Inequitable Result

In addition, not adding Zhao to the judgment would constitute an inequitable result.  The Ninth Circuit has found that "[a]n inequitable result arises when the existence of an unsatisfied creditor is coupled with an abuse of the corporate form, such as . . . undercapitalization so severe that the capital input is insufficient to meet obligations that could reasonably be expected to arise in the normal course of business."  *Oddenino & Gaule v. United Fin. Grp. of Illinois*, No. 98-55431, 1999 WL 1011910, at *2 (9th Cir. Nov. 4, 1999); *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985) ("An inequitable result may follow if the complained of acts are treated as those of an undercapitalized corporation."); *Politte v. United States*, No. 07-cv-1950-AJB, 2012 WL 965996, at *11 (S.D. Cal. March 21, 2012) ("With respect to the second requirement for alter-ego, the kind of 'inequitable result' that makes alter-ego liability appropriate is an abuse of the corporate form,

11

720845403

such as undercapitalization or misrepresentation of the corporate form to creditors.'" (quoting *Orloff v. Allman*, 819 F.2d 904, 909 (9th Cir. 1987) and citing, *inter alia*, *RRX*, 772 F.2d at 546).

A recent California appellate court decision explained that there was an "inequitable result" for purposes of amending the judgment to add an additional judgment debtor where the trial court had found the parties were "one and the same" and where the corporation had "no substantial assets from which the judgment could be satisfied" such that the plaintiff was unable to collect the judgment from that corporation. *Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership*, 222 Cal.App.4th 811, 816 (2013).

As discussed above, Zhao's testimony demonstrates a clear knowledge that 88 Connection was not adequately capitalized and there was a clear unity of interest between 88 Connection and Zhao. The difficulties this creates in enforcing any judgment against 88 Connection, which according to Zhao now has ceased operations and has no assets, are obvious. Failure to hold him responsible for his actions in this regard manifestly would lead to an inequitable result. *See RRX Indus.*, 772 F.2d at 546 ("An inequitable result may follow if the complained of acts are treated as those of an undercapitalized corporation"); *The Universal Church, Inc. v. Standard Construction Co. of San Francisco, Inc., et al.,* No. 14-cv-04568-RS, 2015 WL 7753211, at *6 (N.D. Cal. Dec. 2, 2015) (denying defendant's motion for summary judgment because reasonable jury could find that not piercing the corporate veil would lead to an "inequitable result" based on facts raising inference that plaintiff would have difficulty collecting from company "because of the company's undercapitalization").

As the Northern District of California recently stated in the pending complaint against both Zhao and 88 Connection relating to post-judgment damages, an inequitable result may occur where a business incurred liabilities

12

PLAINTIFFS' MEMO OF P's & A's ISO MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG
ZHAO a/k/a CHARLIE ZHAO AS AN ADDITIONAL JUDGMENT DEBTOR; 13-CV-01157-L-KSC
720845403

"using an undercapitalized corporation that defendant Zhao fully controlled and whose corporate assets he 'diverted' for his personal use 'to the [plaintiffs'] detriment.'" *Pacific Bell Telephone Co., et al. v. 88 Connection Corp., et al.*, No. 15-cv-04554-LB, 2016 WL 3257656 at *6 (N.D. Cal. June 14, 2016) (discussing the "inequitable result" prong and California cases, including *Sonora Diamond Corp. v. Superior Court of Tuolumne County*, 83 Cal. App. 4th 523, 528 (2000), and noting that a failure to satisfy a creditor "in connection with a 'unity of interest'" may constitute inequitable conduct).

### B. Zhao Had Control of the Litigation and Had Ample Occasion to Diligently Conduct the Litigation.

As detailed above, Zhao was kept fully advised of the underlying litigation prior to judgment.  As agent for service of process for 88 Connection, he was served with the complaint in May 2013.  ECF No. 4.  Throughout the course of the action, the AT&T ILECs served Zhao with the relevant pleadings at several different addresses via overnight mail.  MacDonald Decl. at ¶ 4.  Moreover, on August 21, 2014, an attorney for the AT&T ILECs (Ms. Mimi MacDonald) spoke directly with Zhao by telephone.  *Id.* at ¶ 5.  On that call, Ms. MacDonald described the litigation and prior court orders and told Zhao that the AT&T ILECs intended to file a motion on August 29, 2014, requesting that the Court set out a judgment against 88 Connection pursuant to Rule 58(a) of the Federal Rules of Civil Procedure.  *Id.* at ¶ 6.

During that same telephone conversation, Zhao represented that his company did not owe the AT&T ILECs any access charges, that the issues related to a predecessor of 88 Connection, and that he had consulted with a lawyer who told him that all of the charges that 88 Connection owes had already been paid by the provider from whom he receives local phone numbers.  *Id.* at ¶ 7.  Zhao further indicated to Ms. MacDonald that he would consult further with that [unnamed]

720845403

attorney. *Id.* Ms. MacDonald told Zhao that if she did not hear from him or his attorney on or before August 28, 2014, the AT&T ILECs intended to request that the Court enter a judgment against 88 Connection. *Id.* Thereafter, neither Ms. MacDonald nor any other counsel for the AT&T ILECs were ever contacted by Zhao, his counsel, or any other representative of 88 Connection. *Id.* at ¶ 8. Shortly thereafter, on August 29, 2014, Ms. MacDonald filed a declaration with this Court detailing the above interactions with Zhao.[2] MacDonald Decl. Ex. B.

All of the above spells out quite clearly that Zhao had knowledge of and control over the litigation before judgment was entered, but that he made the strategic decision to not engage in that litigation, and to allow a default judgment to be entered against 88 Connection. Courts have held that the fact that the underlying judgment was a default judgment would not prevent a court from amending the judgment to add its alter egos. For example, in *Calvin Brian International Company v. Gustto, Inc.*, No. 13-cv-0218-GPC-BLM, 2014 WL 3548143 at *4 (S.D. Cal. July 17, 2014), the court granted a motion to amend the default judgment to add an alter ego on the grounds that the alter ego was the "100% shareholder, CEO, and president of [defendant]" and thus "had complete control of this litigation." The court held that the fact that a default judgment was ultimately entered did not prevent amendment of the judgment since the alter ego "has been provided sufficient notice of these proceedings, from the entry of default to the present, to participate thoroughly or, at a minimum, to oppose Plaintiff's instant request to add [the alter ego] as a judgment debtor." *Id.* Similarly, in *Craigslist, Inc. v. Mesiab*, No. 08-cv-05064-CW-MEJ, 2010 WL 5300883 at *9 (N.D. Cal. 2010), adopted by 2010 WL 5300881 (N.D. Cal. 2010), the court amended a judgment entered by default to add an alter ego or successor of a

---

[2] When questioned on September 23, 2015, Zhao did not deny that this conversation took place; rather he asserted that he had no memory of it. (MacDonald Decl. Ex. C at 164:4-9).

720845403

company because the alter ego or successor entity "was afforded the opportunity to control the litigation."   The court further noted that if the entity were not added to the judgment it would be impossible to recover damages and the defendants would have successfully "thwarted the legal process.'"  *Id.* at \*7.

Notably, in an unpublished decision from 2008 involving strikingly similar circumstances and applying Section 187 of the California Code of Civil Procedure, the California Court of Appeal allowed an amendment against an individual who was the sole shareholder and agent for service of process for a corporation and who made a "strategic decision not to reinstate the corporations and present a defense." *Shanghai Minguang Intern. Group Co., Ltd. v. Yang,* No. E044331, 2008 WL 4004697 at \*5 (Cal. Ct. App. Aug. 29, 2008); *Nunez v. Holder* 594 F.3d 1124, 1137, n. 10 (9th Cir. 2010) (unpublished state-court decisions are "pertinent to show how a statute has been applied in practice"); *Oceans II, Inc. v. Skinnervision, Inc.*, No. 12-cv-06867-CAS, 2015 WL 4484208 at \*5 (C.D. Cal. July 20, 2015) (citing to *Shanghai Minguang*, 2008 WL 400469)).

The court in *Shanghai Minguang* noted that that shareholder—like Zhao here—had the "opportunity to present his own defense and controlled the corporations' defense *but chose not to do so*" and, accordingly, he was not deprived of his "due process right to participate in  litigation and present his defense in this action." *Shanghai Minguang,* 2008 WL 4004697 at \*6 (emphasis added).[3]

---

[3] The *Shanghai* court also noted that the individual even may have been *required* to intervene in the underlying litigation because "[a]s sole shareholder, officer, director, and president of the corporations, which were undercapitalized and in debt to plaintiff for over $1 million, there was substantial risk of [the individual] being held liable as the alter ego of the corporations, which [the individual] knew had no assets and had ceased to exist." *Shanghai Minguang,* 2008 WL 4004697 at \*6.  That is the case here as well.  Zhao admitted knowing that 88 Connection had more liabilities than assets by 2013 (i.e., when the underlying litigation was pending), a time in which it is undisputed that he was the sole shareholder and

1        Here, Zhao had ample opportunity to present a defense and, in fact,

2   represented that he was consulting with an attorney, even disclosing to the AT&T

3   ILECs his various theories as to why 88 Connection was not liable, including that

4   the claims involved a predecessor of 88 Connection and that 88 Connection had

5   paid the fees at issue.  MacDonald Decl. at ¶ 7.  For unexplained and, perhaps,

6   strategic reasons, Zhao chose not to respond further.  Prudent or not, Zhao should

7   be held accountable for his strategic ploys.

8   ## V.   **CONCLUSION**

9        For the reasons stated above, this Court should grant the AT&T ILECs'

10  motion to amend the default judgment to add Gang Zhao, a/k/a Charlie Zhao, as an

11  additional judgment debtor.

12  Dated:  August 15, 2016                    MAYER BROWN LLP

13

14      By:   s/ *Matthew H. Marmolejo*

15  MATTHEW H. MARMOLEJO
    Email:  *mmarmolejo@mayerbrown.com*

16  Attorneys for Plaintiffs
    Pacific Bell Telephone Company,

17  BellSouth Telecommunications, LLC,
    Illinois Bell Telephone Company,

18  Indiana Bell Telephone Company,
    Incorporated, Nevada Bell Telephone

19  Company, The Ohio Bell Telephone
    Company, Southwestern Bell Telephone
    Company, and Wisconsin Bell, Inc.

20

21

22

23

24

25

26

27  _____
    officer of 88 Connection.

28

720845403