1  Lewis Phon Bar #74907
   Law Offices of Lewis Phon
2  4040 Heaton Court
   Antioch, California 94509
3  (415) 574-5029 tel
   (415) 706-7600 Fax
4
   ATTORNEY FOR DEFENDANTS
5  Gang Zhao and 88 Connection
   Corporation
6

7

8

9

10                  UNITED STATES DISTRICT COURT

11          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13

14  PACIFIC BELL TELEPHONE CO. ET AL,   Case No. 13-CV-01157-L-KSC

15

16      Plaintiffs,               OPPOSITION TO MOTION TO
                                   AMEND JUDGMENT TO ADD
17                                 DEFENDANT GANG ZHAO WITH
                                   MEMORANDUM OF POINTS AND
18                                 AUTHORITIES

19  vs.
                                   DATE: SEPTEMBER 19, 2016
20                                 TIME: 1:30 A.M.
    88 CONNECTION CORPORATION      PLACE: Courtroom 5B
21

22

23      Defendants.

24  _____/

25

26

                              i

# TABLE OF CONTENTS

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 1

THE PLAINTIFFS CITE A NUMBER OF DECISIONS NOT PUBLISHED TO THE
    FEDERAL REPORTER AS THEIR AUTHORITY THAT MR. ZHAO HAD THE
    OPPORTUNITY TO DEFEND THE ORIGINAL LAWSUIT BUT HAD FAILED TO
    DO SO.  WHILE THE ABILITY TO CITE UNPUBLISHED OPINIONS IS
    ALLOWED IN THE NINTH CIRCUIT, THEY ARE NOT CONSIDERED
    PRECEDENT AND ARE NOT BINDING ON THE  COURT. . . . . . . 2

IT IS NOT ENOUGH TO FIND THAT A PARTY WAS AWARE OF THE SUIT AND
    HAD THE OPPORTUNITY TO DEFEND IT IN ORDER TO PROVE THAT HE
    HAD CONTROLLED THE UNDERLYING LITIGATION . . . . . . . . 4

THE FACTS DO NOT SUPPORT ANY FINDING OF AN ALTER EGO AS THE
    CORPORATE FORMALITIES WERE RESPECTED BY MR. ZHAO . . . 13

THE MOTION TO DISMISS WAS NOT DISPOSITIVE OF WHETHER PLAINTIFFS
    HAVE PROVEN AN ALTER EGO CLAIM . . . . . . . . . . . . 19

THE FACT THAT A PARTY MAY SEEK PROTECTION FROM LIABILITY
    USING A CORPORATION IS SANCTIONED  . . . . . . . . . . 19

THE AMOUNT OF DAMAGES THAT THE PLAINTIFFS SOUGHT IN THIS CASE
    EXCEEDED THE PERIOD BARRED BY THE STATUTE OF LIMITATIONS.
    MOREOVER, THE DAMAGES WERE CALCULATED BASED UPON A PRESENT
    VALUE BASIS RATHER THAN THE ACTUAL AMOUNT PLUS PREJUDGMENT
    INTEREST AT THE FEDERAL RATE.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

THE CORPORATION WAS NOT UNDERCAPITALIZED  . . . . . . . . . 21

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . 23

**TABLE OF AUTHORITIES**

Rennick v. O.P.T.I.O.N.  Care, Inc., (9th Cir. 1996)
77 F.3d 309, 317..............................................3

Credit Suisse v. First Boston Corp. v. Grunwald
(9th Cir. 2005) 400 F.3d 1119 fn. 8...........................3

Taylor v. Quall (C.D.Cal. 2006)  458  F.Supp.2d  1065, 1068....3

Nunez v. Holder (9th Cir.  2010)  594  F.3d  1124, fn. 10......3

North Atlantic Distribution, Inc ,V. Teamsters Local Union NO.
430 (2007) 497 F.Supp.2d 315..................................4

Motores De Mexicali. S.A. v. Superior Court of
Los Angeles County (1958) 51 Cal.2d 172 . . . . . . . . . . 5

Mirabito v. San Francisco Dairy Co, 1 Cal.2d 400  . . . . . . 5

Mullaney v. Wilbur (1975) 421 U.S. 684,  691,  . . . . . . . 6

Rennick v. O.P.T.I.O.N.  Care, Inc., (9th Cir. 1996)
77 F.3d 309, 313. . . . . . . . . . . . . . . . . . . . . . 6

Shanghai Minquang Intern. Group Co. Ltd. v. Yang (2008)
E044331.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Craigslist, Inc. v. Meslab, (2010) No. C 08-05064
CW (MEJ)2010 WL 5300883 . . . . . . . . . . . . . . . . . . 7

McClellan v. Northridge Park Townhome Owners Assoc., Inc.,
(2001) 89 Cal.App.4th 746, 753, 107 Cal.Rptr.2d 702 . . . .  9

Minton v. Cavaney (1961) 56 Cal.2d 576. . . . . . . . . . .  10

NEC Electronics, Inc. v. Hurt (1989)
208 Cal.App.3d 772, 256 Cal.Rptr. 441 . . . . . . . . . . .  10

Calvin Brian International Company v. Gustto, Inc.
No. 13-cv-0218-GPC-BLM, 2014 WL 3548143 at *4
(S.D. Cal. July 14, 2014) . . . . . . . . . . . . . . . . .  10

Katzirs Floor and Home Design v. M-MLS.COM
(Ninth Circuit 2004) 394 F.3d 1143 . . . . . . . . . . . .  12

Glendale Assocs., Ltd. v. N.L.R.B., 347 F.3d 1145, 1154
(9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . .  12

United States Fire Insurance Company v. National Union
Fire Insurance Company of Pittsburgh, Pennsylvania

iii

(1980) 107 Cal.App.3d 456, 165 Cal. Rptr. 726 . . . . . . .   14

Bravado International Group Merchandising
Services, Inc., et al., v. Ninna, Inc (2009)
655 F.Supp.2d 177, 194  . . . . . . . . . . . . . . . . .   15

Sonora Diamond Corp. v. Superior Court  (2000)
83 Cal.App.4th 523, 99 Cal.Rptr.2d 824 at 836.  . . . . . .   18

Mesler v. Bragg Management Co., (1985)
39 Cal.3d 290, at 301.  . . . . . . . . . . . . . . . . .   15

North Atlantic Distribution, Inc ,V. Teamsters
Local Union NO. 430 (2007) 497 F.Supp.2d 315 . . . . . . .   15

Scheuer v. Rhodes (1974) 416 U.S. 232, 94 S.Ct. 1683,
40 L.Ed.2d 90. . . . . . . . . . . . . . . . . . . . . .   19

Hiehle v. Torrance Millworks, Inc., (1954)
126 Cal.App.2d 624, 272 P.2d 780, 783.  . . . . . . . . . .   19

Anderson v.Abbott (1944) 321 U.S. 349, at 361 . . . . . . .   19

Western Pacific Fisheries, Inc. v. S.S. President Grant
730 F.2d 1280, 1289 . . . . . . . . . . . . . . . . . . .   21

Associated Vendors, Inc. v. Oakland Meat Co. (1962)
210 Cal. App.2d 825, 841-842 26 Cal. Rptr. 806  . . . . . .   21

Bank of Montreal V. SK Foods, LLC (2012) 476  B.R. 588  . .   21

Ninth Circuit Rule  36-3.................................... 2

Corps. Code §312(b)..........................................17

Corp. Code §5211(a)(3).......................................17

Corp. Code §5211(b)..........................................17

Corp. Code §5211((a) 2)..................................... 18

Corp. Code §5211((a)2)and(3).................................18

Corp. Code §212..............................................18

Corp Code §5211(a)(7)........................................18

C.C.P. §338..................................................20

iv

**STATEMENT OF FACTS**

1. On or about May 15, 2013, plaintiffs filed suit against 88 Connection Corporation (herein referred to "88 Connection" or "corporation") for payment for use of their telephone lines. The corporation did nothing to respond to the complaint resulting in a default judgment rendered against it in September 2014. The plaintiffs now seek to add Gang Zhao as an alter ego defendant to the default judgment.

2. The gist of the lawsuit was that, sometime in 2006,

3. according to the plaintiffs, the FCC had ruled that users of the plaintiffs' telephone lines were required to reimburse the plaintiffs for use of the telephone lines. Aside from this ruling, there was no agreement by the defendant nor by any of its principals to pay these charges.

4. The corporation was incorporated on February 23, 2010 with the intention to sell prepaid calling cards. The model for this business is that the corporation would purchase the right to use local access telephone numbers from certain local access number providers. These numbers could then be used by purchasers of the calling cards to make a local call which could be connected to a long distance carrier line. The purchaser would pay for a long distance call on per minute basis.

5. The corporation understood that it would pay the provider for use of the phone lines and that it was not responsible for charges incurred by the provider.

1

6.  When the plaintiffs filed suit in May 15, 2013, they named only the corporation as a defendant.  Neither the corporation nor any of its principals ever responded to the suit nor sought to aside the default judgment.

7.  The following year, in September 2015, the plaintiffs conducted an order of examination that was directed against the corporation.  Mr. Zhao appeared as an officer of the corporation and was not prepared to answer anything beyond questions about the assets and liabilities of the corporation.

**THE PLAINTIFFS CITE A NUMBER OF UNPUBLISHED DECISIONS AS THEIR AUTHORITY THAT MR. ZHAO HAD THE OPPORTUNITY TO DEFEND THE ORIGINAL LAWSUIT BUT HAD FAILED TO DO SO.  WHILE THE ABILITY TO CITE UNPUBLISHED OPINIONS IS ALLOWED IN THE NINTH CIRCUIT, THEY ARE NOT CONSIDERED PRECEDENT AND ARE NOT BINDING ON THE  COURT.**

8.  Ninth Circuit Rule 36-3 provides that unpublished Ninth Circuit dispositions and orders are (a) not precedent (i.e., not binding on district courts or other Ninth Circuit panels), except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.

**9.**  These decisions are citable to courts within the Ninth Circuit if issued on or after January 1, 2007 but not citable if issued before January 1, 2007, except under limited circumstances.  In either case, unpublished cases are not deemed precedent.

10. As to unpublished state court decisions, the Ninth Circuit and the federal district courts usually follow the state rules regarding the citation of unpublished decisions.  See Rennick v. O.P.T.I.O.N.  Care, Inc., (9th Cir. 1996) 77 F.3d 309, 317. ("Appellants may not cited a California decision because rehearing was granted and the opinion on rehearing was not published referring to Cal.Rules of Court 976, 977.").  See also, Credit Suisse v. First Boston Corp. v. Grunwald (9th Cir. 2005) 400 F.3d 1119 fn. 8,

> ("Under California Rules of Court, a superceded opinion is not considered published, and an unpublished opinion cannot be cited to or relied on by other courts. Cal. R. Ct. 976, 977. In short, an unpublished opinion does not constitute binding precedent. Accordingly, we are not bound by the Jevne court's analysis of California law").

11. At a minimum, an unpublished state court decision is not considered binding precedent. Credit Suisse, supra, 400 F.3d 1119, fn. 8.)

12. Federal district courts follow the practice of the Ninth Circuit.  See Taylor v. Quall (C.D.Cal. 2006)  458 F.Supp.2d  1065, 1068,

> ("All of the other authority cited by Plaintiff is also inapposite.  The two California Court of Appeal cases he refers to are unpublished, and should not have been cited pursuant to California Rule of Court 977(a).")

13. While plaintiffs herein have cited Nunez v. Holder (9th Cir. 2010)  594  F.3d  1124, fn. 10, which dealt with a criminal statute concerning moral turpitude, for the proposition that

3

unpublished state-court decisions are "pertinent to show how a statute has been applied in practice", such applications are limited and, again, are not precedent.

**IT IS NOT ENOUGH TO FIND THAT A PARTY WAS AWARE OF THE SUIT AND HAD THE OPPORTUNITY TO DEFEND TO PROVE THAT HE CONTROLLED THE UNDERLYING LITIGATION**

14. In North Atlantic Distribution, Inc ,V. Teamsters Local Union NO. 430 (2007) 497 F.Supp.2d 315, the court noted that though the executive was an alter ego of the corporation and was aware of the suit against the corporation, that did not justify extending a default judgment to him. ("Therefore, a finding of alter ego status makes personal liability of a shareholder possible, but is not by itself sufficient...") North Atlantic Distribution, Inc., supra, at paragraph [11].

15. In the case at bar, even if Mr. Zhao is found to be an alter ego, as there was an absence of any defense of the lawsuit, there can be no finding that Mr. Zhao had controlled the underlying litigation.

16. The plaintiffs have cited at least three unpublished cases in support of their argument that Mr. Zhao had controlled the underlying litigation although none of these cases are persuasive authority nor are precedent.

17. To begin with, the California Supreme Court has, long ago, dictated in what circumstance may an alter ego defendant be added to a default judgment. The operative legal principle is that a potential defendant must have had control of the

4

underlying litigation.  Control of the litigation does not mean simply that a party had the opportunity to respond but simply chose not to.

18.  In <u>Motores De Mexicali. S.A. v. Superior Court of Los Angeles County</u> (1958) 51 Cal.2d 172, 331 P.2d 1, it was held that after a default judgment has been rendered against a named defendant, a plaintiff cannot add nor amend the judgment to include additional defendants if such defendants did not control or litigate the original complaint.  In <u>Motores</u>, supra, the plaintiff had sued a single defendant, Erbel, Inc., to recover the principal and interest due on certain automobile purchase drafts that were issued to a fictitious name, Bi Rite Auto Sales, used by Erbel.  However, the principals of Erbel, Inc., namely, Erwin Resnick, William Cowan and R. Cowan, were using the name of Bi Rite Auto Sales to purchase vehicles even though the name belonged to the corporation.  The three individuals were found to have used the corporation to divert the monies to themselves as salaries and loan repayments and were found to be in control of the corporation.

19.  Five years later, the plaintiff sought to amend the judgment to add Resnick and the two Cowans as judgment debtors to the default judgment on the theory that the corporation was their alter ego.  The plaintiff cited <u>Mirabito v. San Francisco Dairy Co</u>, 1 Cal.2d 400 in support of the proposition that a judgment can be amended to add an alter

ego defendant when that defendant is the true defendant in the original suit.  However, the California Supreme Court found <u>Mirabito</u> inapplicable because the defendant in that case had subsidized and had controlled the main litigation either by themselves or through their attorneys.  In contrast, because in <u>Erbel, Inc</u>, the three individuals had not in any way participated in the defense of the original action, plaintiff could not be permitted to add them as debtors to the default judgment.

20. <u>Motores</u>, supra, is controlling state law and is to be recognized by the federal courts.  Federal courts deciding issues of state law must determine how state courts would rule on those same issues.  <u>Mullaney v. Wilbur</u> (1975) 421 U.S. 684, 691, "state courts are the ultimate expositors of state law, and federal courts "are bound by their constructions except in extreme circumstances."  A district court sitting in diversity generally must apply the choice of law rules for the state in which it sits.  <u>Rennick v. O.P.T.I.O.N.  Care, Inc.</u>, (9th Cir. 1996) 77 F.3d 309, 313.  Therefore, <u>Motores</u>, supra, should be applied to the case at bar.

21. Plaintiffs have cited <u>In Shanghai Minquang Intern. Group Co. Ltd. v. Yang</u> (2008) E044331, an unpublished opinion, in hope of expanding the ruling stated in <u>Motores</u>, supra.  However, not only is <u>Shanghai</u> not precedent, but the facts in <u>Shanghai</u> are remarkably different from those of the instant

6

case. In <u>Shanghai</u>, the court found that the defendant had controlled the litigation in that he chose not to revive a suspended corporation after it got sued by the plaintiff. A default was entered against the corporation. After the default, the defendant retained an attorney to set aside a default against the corporation. However, the motion to set aside was unsuccessful because the corporation could not appear in the action as it had been suspended. Under these circumstances, the court found that the defendant had the opportunity to defend the case but chose not to. Unlike the case at bar, however, the defendant did take some action by moving to set aside the default. Moreover, simply not choosing to defend is not the correct standard to apply when there is no obligation to do so. Motores, supra.

22. The court also found that the defendant had used the corporation to buy goods which it could not afford. The defendant could not produce any corporate records, bank accounts nor any tax returns. The defendant could not show that he had observed any of the corporate formalities. There was the belief by the court that the defendant had abused the corporate form and had intentionally incur debt for his personal benefit without any intention to pay.

23. In another case cited by the plaintiffs, <u>Craigslist, Inc. v. Meslab</u>, (2010) No. C 08-05064 CW (MEJ)2010 WL 5300883, (unpublished in the Federal Reporter) the defendant, Meslab, had created a successor corporation, Mesiab Labs, to

7

continue the illegal activities of the original defendant, Easy Ad, LLC.  Easy Ad was found to have intentionally violated the terms of use of Craiglist's online website by creation of an autoposting and circumvention system while using Craiglist's brand without permission.  This conduct caused Craigslist to expend substantial amount time and resources to try to stop the Easy Ad's activities.

24.   After having been caught, the principal of Easy Ad stated his intention in an email that a new corporation, Mesiab Labs, would be formed for the sole purpose of continuing with Easy Ad's  activities.  This was, clearly, a misuse of the corporate form in that the corporation was employed to continue with the defendant's fraudulent scheme to harm the plaintiff.

25.   Nevertheless, the court still had to find some act on the part of the defendant to find that it had controlled the underlying litigation.  To this end, the court found that the principal at Mesiab Labs was the same person who appeared at the Rule 30(b)(6) examination on behalf of Easy Ad and that Mesiab Labs was simply a continuation of Easy Ad's business.  Notably, however, there was no counter argument from Mesiab Labs in response to the argument that the defendant had controlled the underlying litigation. Without a counter argument, the court found that appearing at the examination amounted to action sufficient to rise to the level of controlling the corporation.   The court cited

<u>McClellan v. Northridge Park Townhome Owners Assoc., Inc.</u>, (2001) 89 Cal.App.4th 746, 753, 107 Cal.Rptr.2d 702 for the principle that a successor corporation cannot claim that it lacked the opportunity to control the litigation brought against the original entity.

26.   Unlike <u>Craigslist</u>, however, in <u>McClellan</u>, supra, the predecessor corporation had filed a counter claim but had declined to appear at the arbitration hearing which the court found to be simply choosing not to defend.  This action was more than simply ignoring the original lawsuit.

27.   Interestingly, the <u>Craigslist</u> court did not discuss the ruling of <u>Motores</u>, supra, wherein the alter ego defendants had done nothing in the defense of the original lawsuit which is more applicable to the case at bar.  In <u>Motores</u>, supra, the plaintiffs had served the individuals of the defendant corporation with the summons and complaint although they were not named in the complaint.  The Court found that despite such service amounting to knowledge of the lawsuit, these individuals had no duty to intervene in the lawsuit though, presumably, they had the opportunity to do so.

28.   The <u>Craigslist</u> court's finding that the mere act of appearing at a deposition may be deemed controlling the litigation seems questionable as well in light of holdings in other cases.  For example, even the filing of an answer on behalf of a corporation by an attorney who was also a

9

director, secretary and treasurer was not deemed to be

controlling the litigation.  See <u>Minton v. Cavaney</u> (1961) 56

Cal.2d 576. Also, see <u>NEC Electronics, Inc. v. Hurt</u> (1989)

208 Cal.App.3d 772, 256 Cal.Rptr. 441, wherein the court,

after finding that there was evidence that defendant was the

alter ego of his corporation, nevertheless stated, at

paragraph [8],

> "there is no evidence to show that Hurt controlled
> the defense of the litigation. There was no
> defense for Hurt to control. After [the
> corporation] filed its general denial, no further
> proceedings were conducted.... Most importantly,
> [the corporation] did not appear at trial....
> Moreover, it is not enough that Hurt was 'aware'
> of the action between NEC and [the corporation].
> Surely every chief executive officer of a
> corporation is cognizant of claims asserted
> against the corporation."

29. Similarly, in the case at bar, Mr. Zhao had not even

testify at a deposition nor did he do anything that would

warrant a finding of him controlling the litigation.  Even

if Mr. Zhao was aware of the lawsuit, there was no

obligation for him to defend as he was not named in the

suit.  See <u>Motores</u>, supra.

30. <u>In Calvin Brian International Company v. Gustto, Inc</u>. No.

13-cv-0218-GPC-BLM, 2014 WL 3548143 at *4 (S.D. Cal. July

14, 2014) another unpublished opinion cited by the

plaintiffs, there was a suit filed by a maker of handbags

who sold the handbags to the defendant corporation for

resale.  The president of the corporation, Planchon,

created the trademark "Gustto" and had licensed it to her

10

corporation, Gustto, Inc.  When the corporation failed to pay for handbags resulting in a debt of $300,000 to the plaintiff, the plaintiff sued both Planchon and the corporation for breach of contract and common counts.

31.  This suit was dismissed but the plaintiff later refiled the case against the corporation only.  The corporation filed an answer to the complaint.   The corporation became unrepresented when its counsel withdrew.  A default judgment was entered against the corporation when the corporation failed to retain new counsel to defend the case.   A motion was then filed to add Planchon as an alter ego defendant.

32.  In deciding that Planchon had control of the underlying litigation, the court found that Planchon had retained counsel at the inception of the case and had provided a declaration to support the corporation's counsel motion to withdraw.  At an Early Neutral Conference in the case, Planchon appeared and represented that the corporation was assetless.  In addition, Planchon had caused the corporation to file an answer to the second complaint although, because the corporation became unrepresented, a default judgment was entered against it.  Given these facts, there was reason to find that Planchon had control of the underlying litigation.

33.  The court also found the Planchon had misused the corporation by transferring the assets of the corporation

11

to another corporation which she had created and then had the first corporation order the handbags from the plaintiff.  The corporation never paid for the handbags and it did not have money to do so.  The court found that Planchon had either diverted the handbags to herself or to third parties which essentially left the corporation as an empty shell.

34. In short, all of the cases cited by the plaintiffs wherein an alter ego defendant was allowed to be added to the judgment, there was found to be some activity in response to the complaint which the courts deemed to amount to control of the underlying litigation.

35. In contrast, in the case at bar, there was no action taken to defend the lawsuit nor were there any attorneys even retained to represent the corporation.

36. The federal courts have followed and applied Motores, supra.  In Katzirs Floor and Home Design v. M-MLS.COM (Ninth Circuit 2004) 394 F.3d 1143, the court state at paragraphs [11,12],

> "We believe that *NEC* represents the law that the California Supreme Court would apply if faced with this issue, and we therefore follow it. See Glendale Assocs., Ltd. v. N.L.R.B., 347 F.3d 1145, 1154 (9th Cir.2003) (noting duty to determine how the highest court of the state would decide an issue of state law). In *NEC*, the Court of Appeals of California reversed the Santa Clara County Superior Court's judgment adding a shareholder to a judgment against his wholly-owned corporation where the shareholder's individual interests were not represented in the lawsuit. The corporation did not appear at trial or defend itself, despite a colorable defense, because it was on the verge of bankruptcy. The court reasoned that the sole

12

shareholder, who was not a named party to the suit and
had no personal liability, had no duty to intervene.
NEC, 256 Cal.Rptr. at 442, 445 (relying on Motores ).
It further found that the shareholder's interests were
not represented during the lawsuit where the
corporation had no incentive to, and in fact did not,
defend given its pending bankruptcy. Id.

"Similarly, Sommer was not named individually, knew
M-MLS, Inc. was on the verge of dissolution through
Canadian bankruptcy law, and had no personal duty to
defend the underlying lawsuit. "To summarily add
[corporate shareholders] to [a] judgment heretofore
running only against [the corporation], without
allowing them to litigate any questions beyond their
relation to the allegedly alter ego corporation would
patently violate [due process]." Motores, 331 P.2d at
3. The district court clearly erred in adding Sommer to
the judgment against M-MLS, Inc."

The Katzirs court also stated at paragraphs [7,8],

"William Meade Fletcher et al., Fletcher Cyclopedia of
the Law of Private Corporations § 41.35, at 671
(perm.ed., rev.vol.1999) ("[A]llegations that the
defendant was the sole or primary shareholder are
inadequate as a matter of law to pierce the corporate
veil. Even if the sole shareholder is entitled to all
of the corporation's profits, and dominated and
controlled the corporation, that fact is insufficient
by itself to make the shareholder personally liable."
(footnotes omitted))".

37.  The Katzirs's decision is applicable to the instant case in

that the defendants were not required to respond to the

suit even if they were aware of it.

**THE FACTS DO NOT SUPPORT ANY FINDING OF AN ALTER EGO AS THE**

**CORPORATE FORMALITIES WERE RESPECTED BY MR. ZHAO AND**

**THERE IS NO INEQUITABLE RESULT**

38.  The corporation had observed corporate formalities by

having elections of directors and held board meetings, made

appointment of officers, kept shareholder minutes,

13

1  documented resolutions for board decisions, had issued

2  shares of stock, kept its own separate bank accounts and

3  had maintained records of its income and expenses.  The

4  corporation did not commingle assets nor funds, did not

5  incur debt that it did not expect to pay and had obtained

6  approval for transactions it deemed not in the ordinary

7  course of business.  There was no abuse of the corporation

8  by Mr. Zhao.  Neither 88 Connection nor Mr. Zhao had

9  diverted assets from the corporation for personal gain.

10  39.  In United States Fire Insurance Company v. National Union

11  Fire Insurance Company of Pittsburgh, Pennsylvania (1980)

12  107 Cal.App.3d 456, 165 Cal. Rptr. 726, it was stated at

13  page 469,

14  "(3a) In order for the alter ego doctrine to apply,
   there must be shown not only "such unity of interest

15  and ownership that the separate personalities of the
   corporation and the individual no longer exist," but

16  further "that, if the acts are treated as those of
   the corporation alone, an inequitable result will

17  follow." (Automotriz etc. De California v. Resnick
   (1957) 47 Cal.2d 792, 796 [306 P.2d 1].) In the trial

18  court, National virtually conceded the existence of
   the first element. In its brief on appeal, however,

19  National argues: "There was clearly a separate
   corporate existence." We find it unnecessary to

20  resolve this issue, however, since it is clear, in
   any event, that even if U.S. West Investments failed

21  to achieve any separate existence, no fraud or other
   inequitable result will follow if it is recognized as

22  the sole insured under the nonowned aircraft coverage
   of National's policy."

23  40.  The court went on to say at page 470 "Generally speaking,

24  in order to enforce the alter ego theory bad faith must be

25  shown."  Also, see Bravado International Group

26  Merchandising Services, Inc., et al., v. Ninna, Inc (2009)

14

655 F.Supp.2d 177, 194 ("The critical question is whether the corporation is a "shell" being used by the individual shareowners to advance their own "purely personal rather than corporate ends.")

41. Therefore, in most cases where the corporate veil is pierced, there is a usually a combination of factors wherein some bad faith is involved in that the defendant purposely had abused the corporation for his own benefit. Even if plaintiffs can show there was failure to observe some formalities, bad faith does not exist in the case at bar.

42. As stated in <u>Mesler v. Bragg Management Co.</u>, (1985) 39 Cal.3d 290, at 301, "Thus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require."

43. In plaintiffs' motion, they describe several observations which they speculate could be indicative that the Mr. Zhao was the alter ego of the corporation. The plaintiffs claim that Mr. Zhao used a Honda Oddessey for personal as well as business uses and that he had several email accounts that he had used for personal uses. The plaintiffs do not state who actually owns the Honda.

44. In fact, the Honda is owned by Mr. Zhao and the corporation contributed no funds towards its purchase which was acquired in 2005. Neither did the corporation pay for its upkeep or maintenance. In the instances where Mr. Zhao

used the vehicle to transport customers of the corporation, he was simply reimbursed for documented gasoline purchases which is an acceptable practice and was approved by the corporation. There was no commingling nor unauthorized spending here.

45. Similarly, Mr. Zhao sought and obtained approval from the corporation to be reimbursed for expenses that he incurred on behalf of the corporation. This is an acceptable practice which could include reimbursement for cell phone charges. As to the plaintiffs' claim regarding use of a personal email address used for business, such addresses are free. As a salesman for the corporation, it would only be practical for Mr. Zhao to use the same personal email to receive correspondence from customers and it costs the company nothing.

46. Plaintiffs have not presented any other instance where Mr. Zhao used corporate assets for his personal use. There were no instances where Mr. Zhao diverted the corporate assets for his own personal benefit.

47. Plaintiffs point out that Mr. Zhao did not know whether the corporation operated with a board of directors and "explained that no officer elections had ever been held" Plaintiffs' Points and Authorities, at page 5, lines 1-2.

48. Mr. Zhao simply there said there were no election of officers. The term "election" implies a vote by at least more than one person. In fact, officers are not elected

16

but are appointed by the board of directors and serve at
its leisure.  See Corps. Code, §312(b).  Both Mr. Zhao and
Simon Wong were appointed officers of the company by Mr.
Zhao as director.  Mr. Zhao was designated the President
and Tresurer and Mr. Wong designated as Secretary.

49. When asked if he knew if there was "board of directors",
Mr. Zhao said "he did not know" but said that he was a
director.  In fact, Mr. Zhao was the sole director of the
corporation but did not know that a "board" could mean one
director.  This is a common misconception.  There were,
legally, meetings of the directors, albeit as one person.
Each year, Mr. Zhao, as a shareholder, elected himself as a
director, which is in accordance with the company's bylaws.

50. At the examination, Mr. Zhao did not expect to be examined
on how the corporation was formed.  Mr. Zhao expected to
answer only questions as to the assets and liabilities of
the company.   Nevertheless, Mr. Zhao cooperated to the
extent that he was able to.   The board of directors which
is actually just Mr. Zhao, reappointed these individuals to
continue in their positions for years 2011 through 2016.

51. Moreover, since Mr. Zhao was the only director, he was not
required to "meet" with any other director.  Corp. Code
§5211(a)(3) and Corp. Code §5211(b). It would suffice that
he simply filled out a resolution for decisions he made on
behalf of the corporation by himself, Corp. Code §5211(b).
Neither was he required to sign any waiver of a notice of a

17

meeting as just by appearing at his office, such would constitute a meeting. Corp. Code, §5211((a)2). A meeting can be had without notice or at the time set by the bylaws. Corp. Code, §5211(a)(2)and(3).

52. In California, where there is only one shareholder, a corporation is required to have just one director. Corp. Code, §212. A board of directors would, thus, technically, consist of one director if the bylaws provide such which would also constitute a quorum. See Corp Code, §5211((a)(7).

53. Mr. Zhao did make resolutions for the important decisions of the company such as leasing space, reimbursing expenses for employees, acquiring equipment, issuing stock, appointing officers, signing agreements with vendors and other non day to day transactions.

54. Mr. Zhao's had observed the corporate formalities even if did not understand legal terminology correctly and he committed on wrongdoing. See Sonora Diamond Corp. v. Superior Court (2000) 83 Cal.App.4th 523, 99 Cal.Rptr.2d 824 at 836. "Here, at least one of the two essential elements of the alter ego doctrine was not established; there was no evidence of any wrongdoing by either Diamond or Sonora Mining or any evidence of injustice flowing from the recognition of Sonora Mining's separate corporate identity."

**THE MOTION TO DISMISS WAS NOT DISPOSITIVE OF WHETHER PLAINTIFFS**

18

**HAVE PROVEN AN ALTER EGO CLAIM**

55. Plaintiffs point to the defendant's losing a motion to dismiss a subsequent lawsuit as support to say that they have made a valid claim for alter ego liability.

56. However, on a motion to dismiss, the court must assume that all allegations in the complaint are true and to view the complaint in favor of the plaintiff. See Scheuer v. Rhodes (1974) 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90. While the court noted that the plaintiff had sufficiently pled a cause of action, no evidence was taken. Therefore, the fact that the defendant lost the motion to dismiss did not mean that plaintiffs had established alter ego liability.

**THE FACT THAT A PARTY MAY SEEK PROTECTION FROM LIABILITY USING A CORPORATION IS SANCTIONED**

57. In that second suit filed by Plaintiffs, they had argued that Mr. Zhao had used the corporation to shield himself from corporate debts. Yet, The vast majority of individuals who do business under a corporation seek this protection. The fact that an incorporator wishes limited liability is not, by itself, sufficient reason to pierce the corporate veil. See Hiehle v. Torrance Millworks, Inc., (1954) 126 Cal.App.2d 624, 272 P.2d 780, 783. See also, Anderson v.Abbott (1944) 321 U.S. 349, at 361 ("The fact that incorporation was desired in order to obtain limited liability does not defeat that purpose").

58. Therefore, the fact that Mr. Zhao sought to incorporate to

19

1    avail himself of the corporate protection should not be

2    used against him.

3    **THE AMOUNT OF DAMAGES THAT THE PLAINTIFFS SOUGHT IN THIS CASE**

4    **EXCEEDED THE PERIOD BARRED BY THE STATUTE OF LIMITATIONS.**

5    **MOREOVER, THE DAMAGES WERE CALCULATED BASED UPON A PRESENT VALUE**

6    **BASIS RATHER THAN THE ACTUAL AMOUNT PLUS PREJUDGMENT INTEREST AF**

7    **THE FEDERAL RATE.**

8    59.  Although defendant is not contesting the merits of the main

9         case, a defense would not have been a fruitless exercise.

10        The defendant could have raised a statute of limitations

11        defense as well as challenged the amount of interest to be

12        assessed on the damages.  According to Dr. Debra Aron,

13        plaintiff's witness, Exhibit 15 at page 9, lines 21-22, the

14        damages were calculated from January 1, 2007 to August 31,

15        2013.  As the lawsuit was filed on May 15, 2013, the

16        plaintiffs should have been precluded from going back to

17        January 1, 2007 to compute their damages.   In California,

18        Plaintiffs' claim was barred, at least, after three years

19        from a transaction in question.  C.C.P. §338.  Therefore,

20        any transaction that occurred prior to March 1, 2010,

21        should have been precluded from collection.

22   60.  Based upon Dr. Aron's calculations, the damages awarded for

23        year 2007 was $820,529, for 2008 was $731,248 and for 2009

24        was $697,933, a total of $2,249,710.  Declaration of Dr.

25        Debra Aron, pg. 20, table 4, These amounts should not have

26        been awarded.

61. Also, the plaintiffs were awarded prejudgment interest at 7% per annum.  In accordance with <u>Western Pacific Fisheries, Inc. v. S.S. President Grant</u> 730 F.2d 1280, 1289, prejudgment interest is determined by 28 U.S.C. 1961 or the constant maturity rate for Treasury yields.

62. In May 2013, that rate was .12% or less than 1% which is certainly less than the 7% as requested by the plaintiffs. Calculating the damages with the correct prejudgment rate would have substantially reduced the amount of damages for years 2010 through 2013.

63. Also, it is possible that defendants never received credit for payments by other long distance carriers who used the same telephone lines on defendants behalf.

### THE DEBTOR WAS NOT UNDERCAPITALIZED

64. In <u>Associated Vendors, Inc. v. Oakland Meat Co.</u> (1962) 210 Cal. App.2d 825, 841-842 26 Cal. Rptr. 806, the court discussed a situation of a grocery store which paid its bills for only two years except for the money it owed to plaintiffs.  The court found that it had its rent and that it operating capital was sufficient.   In that situation, the court stated that, as a matter of law, the corporation could not be found to be undercapitalized.

65. In <u>Bank of Montreal V. SK Foods, LLC</u> (2012) 476  B.R. 588 the court stated "It does not appear that SK Foods LLC did any business, but rather was a holding company; the assets necessary for that purpose are minimal".  Therefore,

whether a company is sufficiently capitalized will depend
upon the nature and cash flow of its business.

66. Similarly, 88 Connection paid its expenses for several
years.  88 Connection was in the service business.  It did
not sell any actual goods.  The only physical inventory
were printed calling cards which contained the phone
numbers for the customers to use.  The operating expenses
were payments to the access number providers, for employee
salaries, for rent, maintenance of the routers and
switches, for supplies, taxes and insurance.

67. The number of employees varied from 4 to 7, including Mr.
Zhao.  Therefore, the company was actually a small
operation and did not require a large outlay to maintain
its operations.  The company was able to pay its normal and
projected operating expenses with just the income from the
sales of the calling cards.

68. 88 Connection was able to keep current with its expenses
from the beginning of 2011 when it started operations up
through 2014.  In early 2014, the company began to fall
behind on its payroll not because it was undercapitalized
but because its customers were not paying on time due, in
part, to the competitors lowering of their prices.
However, there was still approximately $200,000 owing to
the company which was expected to be used to pay its bills.
The company did, eventually, paid up its payroll.

69. More importantly, when the corporation was faced with

22

1   financial difficulties, Mr. Zhao did not attempt to divert

2   or transfer any of the corporate assets to himself in order

3   to deplete the corporation.  Instead, the corporation kept

4   ownership of its equipment and cash.

5   70.  While the plaintiffs have obtained a judgment against the

6   corporation, this was not an anticipated expense for the

7   company.  There was no deliberate intention of incurring

8   this debt without paying for it.

9                       **CONCLUSION**

10  71.  The lack of any defense by Mr. Zhao to the original lawsuit

11  will support a finding that he had not controlled the

12  underlying litigation.  Without such a finding, Mr. Zhao

13  cannot be added as an alter ego defendant whether or not he

14  is deemed an alter ego of the corporation.  Moreover, the

15  facts are that Mr. Zhao is not the alter ego of the

16  corporation since he respected the corporate formalities of

17  the company, kept adequate books and records, maintained

18  segregated bank accounts and finances, had the corporation

19  pay its expenses for several years, made no unauthorized

20  diversion of corporate assets and did not misuse the

21  corporation for his own personal gain.

22

23  Date: August 31, 2016          /s/ Lewis Phon

24                                 Lewis Phon
                                   Attorney for Defendants
25                                 88 Connection Corporation
                                   and Gang Zhao

26

                              23