MAYER BROWN LLP
MATTHEW H. MARMOLEJO (SBN 242964)
 *mmarmolejo@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 229-9500
Facsimile:  (213) 625-0248

Attorneys for Plaintiffs
Pacific Bell Telephone Company, BellSouth Telecommunications, LLC, Southwestern Bell Telephone Company, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Inc., Nevada Bell Telephone Company, The Ohio Bell Telephone Company, and Wisconsin Bell, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY, BELLSOUTH TELECOMMUNICATIONS, LLC, SOUTHWESTERN BELL TELEPHONE COMPANY, ILLINOIS BELL TELEPHONE COMPANY, INDIANA BELL TELEPHONE COMPANY, INCORPORATED, NEVADA BELL TELEPHONE COMPANY, THE OHIO BELL TELEPHONE COMPANY, AND WISCONSIN BELL, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>88 CONNECTION CORPORATION,<br><br>Defendant. | Case No. 13-cv-01157-L-KSC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG ZHAO, a/k/a CHARLIE ZHAO, AS AN ADDITIONAL JUDGMENT DEBTOR**<br><br>The Hon. M. James Lorenz<br><br>Date: Sept. 19, 2016<br>Time: 10:30 a.m.<br>Courtroom 5B<br><br>**No oral argument of this matter will be heard unless requested by the Court.** |

PLAINTIFFS' REPLY ISO MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG ZHAO A/K/A CHARLIE ZHAO AS AN ADDITIONAL JUDGMENT DEBTOR; 13-CV-01157-L-KSC

721571336

88 Connection's Opposition only proves that Gang Zhao, a/k/a Charlie Zhao, is 88 Connection and that, as such, he should be equally responsible, along with 88 Connection, for the results of legal proceedings he controlled. Zhao does not dispute that he exerted total control over 88 Connection and was the sole shareholder, director, president, and officer of 88 Connection for much of its existence. He does not dispute that he had direct notice of this litigation, including an open conversation with Plaintiffs' counsel during which he outlined 88 Connection's defenses and explained that he had been consulting with counsel— and only then strategically chose to do nothing further.

Furthermore, the limited financial documentation Zhao has provided confirm that 88 Connection was undercapitalized for years. Although Zhao now claims that corporate formalities were maintained, and that he never commingled funds and assets, that claim is undermined by the evasive, incomplete and contradictory answers he gave at 88 Connection's Debtor's Examination nearly a year ago.

Zhao's attempt to now thwart the legal process by hiding behind a meaningless corporate form to avoid the consequences of litigation he so clearly controlled should not be supported. The AT&T ILECs' motion should be granted.

## I. 88 CONNECTION'S ARGUMENTS SHOULD BE DISREGARDED AS A PRELIMINARY EVIDENTIARY MATTER.

The Court may reject 88 Connection's arguments without even reaching their substance (or lack thereof). As a threshold matter, all of 88 Connection's arguments are supported by inadmissible material that does not come close to meeting the necessary evidentiary standards. These evidentiary failings are set out in detail in the AT&T ILECs' accompanying evidentiary objections. Leaving aside that the great bulk of these materials were submitted following the expiration of 88 Connection's deadline to submit its opposition, these exhibits are inadmissible for a host of other reasons. Most obviously, none of Gang Zhao's

1

PLAINTIFFS' REPLY ISO MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG ZHAO a/k/a CHARLIE ZHAO AS AN ADDITIONAL JUDGMENT DEBTOR; 13-CV-01157-L-KSC

721571336

declarations actually authenticates any of the exhibits or even asserts that they are true and correct copies of what they purport to be. Fed. R. Evid. 901.[1] Nor does Zhao even attempt to provide foundation for the use of these documents, in contravention of Fed. R. Evid. 602. Finally, the great bulk of the documents are precluded by the rule against hearsay, *see* Fed. R. Evid. 801-802, and none of Zhao's self-serving statements provide a basis to apply any of the exceptions to that rule.

## II. THE OPPOSITION CONFIRMS THAT ZHAO IS 88 CONNECTION'S ALTER EGO.

### A. There Is a Unity of Interest and Ownership, Especially Considering the Compelling Evidence of Undercapitalization.

Even if the Court is inclined to overlook the rampant evidentiary deficiencies that characterize the Opposition, though it should not, the result should be no different. As a substantive matter, the Opposition showcases the obvious: that Zhao is 88 Connection's alter ego. Most strikingly, the information provided in the Opposition makes clear that 88 Connection was severely undercapitalized. "One highly relevant factor in determining a unity of interest is undercapitalization." *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir. 1988) (stating that "the California Supreme Court has held that undercapitalization alone will justify piercing the corporate veil" (citing *Minton v. Cavaney*, 56 Cal.2d 576 (1961)).

As he testified at the Debtor's Exam, Zhao realized that the corporation was going to have higher liabilities than it was going to have cash in about early 2013 ECF No. 24-5 (MacDonald Decl. Ex. C) at 220:12-15. Clearly attempting to neutralize this devastating admission, Zhao now declares that it was keeping up with its expenses until either "early 2014" or, as expressed in the Opposition,

---

[1] Many of the bank records are also illegible and thus fail to comply with Local Rule 5.1.

2
PLAINTIFFS' REPLY ISO MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG ZHAO a/k/a CHARLIE ZHAO AS AN ADDITIONAL JUDGMENT DEBTOR; 13-CV-01157-L-KSC

721571336

"through 2014." ECF No. 25-1 (Zhao Decl.) at ¶ 17; ECF No. 25 (Opp'n) at 26:18-19.[2] But Zhao fails to mention that 88 Connection was clearly not keeping up with expenses because it was neither paying the AT&T ILECs for originating switched access charges, which the FCC held were due and owing back in 2006, nor accruing for those liabilities.[3] Moreover, even taking Zhao's inconsistent references to 2014 at face value, this still shows that 88 Connection was undercapitalized during the time frame of the underlying lawsuit. Moreover, Defendants' conclusory and unsupported statements that it made "payroll" and was adequately capitalized are belied not only by Zhao's prior inconsistent testimony but also by the financial documents he submitted here, including 88 Connection's "Profit & Loss" statements (ECF No. 27, Ex. 6), which show a net income of $2,808.21, **$-77,293.56**, $13,253.95, and **$-65,133.84** for 2011, 2012, 2013, and 2014, respectively. *See also RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985) (holding that fact that corporation had $8,000 in its corporate account was insufficient to defeat a finding of under-capitalization"); *Automotriz Del Golfo De California S.A. De C.V. v. Resnick* (1957) 47 Cal.2d 792, 798 (affirming finding of inadequate capitalization and holding that trial court could have properly inferred that "$5,000 was an insufficient capital investment in view of the volume of business conducted").

Defendants also claim that "[m]ore importantly, when the corporation was faced with financial difficulties, Mr. Zhao did not attempt to divert or transfer any

---

[2] The page number citations to the Opposition refer to the page numbers generated by ECF.

[3] Specifically, the FCC held that "all prepaid calling card providers will now be treated as telecommunications service providers" and, therefore, will be required to pay access charges when their customers originate interstate and international telephone calls using the AT&T ILECs' networks. *In re Regulation of Prepaid Calling Card Services*, 21 FCC Rcd. 7290, ¶ 10 (2006) (subsequent history omitted) ("*Prepaid Calling Card Order*").

of the corporate assets to himself in order to deplete the corporation." ECF No. 25 at 27:1-3. But the Opposition fails to explain how this is even remotely relevant to the issue of 88 Connection's demonstrated undercapitalization.

Furthermore, even though undercapitalization alone would support a finding of alter ego (*Nilsson,* 854 F.2d at 1544), several of the other alter ego factors are also present here, including: (1) Zhao's sole ownership of all the stock of, and his total domination and control over, 88 Connection; (2) the lack of meaningful corporate formalities; (3) Zhao's failure to maintain and preserve corporate and financial documents; and (4) Zhao's treatment of 88 Connection assets as his own.

It is undisputed here that for the majority of 88 Connection's existence and since September 2010, Zhao was and currently remains the president and sole shareholder of 88 Connection. ECF No. 25-1 (Zhao Decl.) at ¶¶ 1, 4. The board of directors "is actually just Mr. Zhao." ECF No. 25 at 21:19. Nearly a year ago, Zhao testified that he left a computer with his company records on it at 2525 Van Ness Avenue and abandoned the computer. ECF No. 24-5 at 139-140. Now, somewhat conveniently, Zhao produced what purport to be corporate records. However, even the limited records produced by Defendants show that Zhao signed and/or was exclusively involved in every single corporate transaction, starting from executing the Articles of Incorporation in February 2010 and going forward.[4] ECF No. 27, Exs. 1-5, 7-14, 16. The only other officer purportedly involved with the corporation was an individual named "Simon Wong" who was nominally the corporate "secretary." ECF No. 25-1 at ¶ 12. Significantly, even though the duties of the secretary were to keep minutes (See ECF No. 27, Ex. 3A at 14), Simon Wong does not appear to have been involved in any of the minutes or other documents produced in these proceedings. Rather, Zhao himself appears to have

---

[4] Although the "corporate records" that Zhao produced indicate that he is the signatory, the signatures on the documents do not match. The AT&T ILECs do not waive any right to object to the authenticity of these records.

served as the "acting secretary" for all the shareholder meetings (where he was also the only attendee) from 2010 through 2016. ECF No. 27, Ex. 3A at 21; Ex. 14.

Moreover, Zhao's self-serving claims that he observed formalities should be given no weight in light of his contradictory statements in the Debtor's Exam, where he admitted that 88 Connection did not recognize commonplace corporate formalities; he claimed not to know whether 88 Connection operated with a Board of Directors (ECF No. 24-5, Ex. C at 85:16-18), and he explained that no officer elections ever had been held. (ECF No. 24-5, Ex. C at 82:22-83:2). He now maintains that there were some limited corporate records or minutes, which he has now produced. But even those few records, which are not authenticated, confirm that corporate formalities were illusory, and that all corporate activities were conducted all by one person: Zhao. For instance, Zhao now claims that 88 Connection had "elections of directors and held board meetings." ECF No. 25 at 17:24-26. But as conceded by Zhao, the "elections" consisted of Zhao electing himself and the "meetings" consisted of Zhao meeting with himself. ECF No. 25 at 21. This stretches the meaning of an election or meeting to an absurdity. *See* ECF No. 25 at 20:25-26 (noting an "election" implies a vote by at least more than one person.)

In his declarations, Zhao asserts that two of the alter ego factors—commingling assets and loans—are absent here. ECF Nos. 25-1, 28. But he does not dispute that he was personally liable for 88 Connection's Chase credit card, which he personally guaranteed. ECF No. 28. And his attempt to refute the lack of commingling consists entirely of self-serving declaration statements and a handful of bank statements, many of which are illegible or contain unexplained transfers to other accounts, suggesting commingling or, at a minimum, unauthorized transactions. ECF No. 27, Ex. 10 (Bank of America account statement for Jan. 1 through Jan. 31, 2011 that notes several transfers to a checking

account ending in "2678," which does not correspond to any of the 88 Connection accounts in the records provided, including the Chase Bank accounts listed in Exhibit 11 (ECF No. 27)).

More fundamentally, the question is not which factors are absent, but rather which factors are present to establish the required unity of interest and ownership. *See Mesler v. Bragg Mgmt. Co.* (1985) 39 Cal.3d 290, 300-301 (noting that a determination of the alter ego theory "will depend on the circumstances of each particular case," and the "essence of the alter ego doctrine is that justice be done").

### B.  There Is An Inequitable Result.

The Opposition makes no real attempt to argue that there is no "inequitable result," which is not surprising given its admission throughout that 88 Connection is now defunct and has no assets, making it impossible for Plaintiffs to satisfy their judgment against 88 Connection. ECF No. 25-1 at ¶ 18. As explained by a California appellate court, an "inequitable result" occurs **as a matter of law** for purposes of amending the judgment to add an additional judgment debtor when the underlying corporation is insolvent. *Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership*, 222 Cal.App.4th 811, 816 (2013).

The Opposition argues that there is no "bad faith" involved (ECF No. 25 at 19:5-11), but bad faith is not required to establish that Zhao is an alter ego. *See RRX Indus.*, 772 F.2d at 543, 546 ("A finding of bad faith, however, is not [a] prerequisite to the application of the alter ego doctrine under California law."); *Politte v. United States*, Case No. 07-cv-1950-AJB, 2012 WL 965996, at *11 (S.D. Cal. March 21, 2012) (bad faith or fraud not required based on binding Ninth Circuit interpretation of California alter-ego law).

The Opposition also suggests that Plaintiffs could and should have named Zhao from the very beginning in 2013. But Plaintiffs did not then have the information they now have to show Zhao and 88 Connection are one and the same.

Courts have soundly rejected such a requirement and recognized that "there are good policy reasons not to force a plaintiff to litigate alter ego status in the underlying action." *Relentless Air*, 222 Cal.App. at 817.

### III. ZHAO HAD CONTROL OF THE LITIGATION AND HAD AMPLE OCCASION TO DILIGENTLY CONDUCT THE LITIGATION.

It also is undisputed that, since its inception, Plaintiffs made great efforts to keep Zhao fully advised of the underlying litigation prior to judgment. The Opposition's central argument as to due process is that Zhao did not engage in sufficient "activity" in responding to the complaint he was served with because "no action [was] taken to defend the lawsuit nor were there any attorneys even retained to represent the corporation." ECF No. 25 at 16:8-12. Zhao does not refute, however, that, on August 21, 2014, he told an attorney for the AT&T ILECs (Ms. Mimi MacDonald) that he had consulted with a lawyer, who in turn told him that all of the charges that 88 Connection owes had already been paid by the provider from whom it received local telephone numbers. ECF No. 24-2 (MacDonald Decl.) at ¶ 7. Zhao further indicated to Ms. MacDonald that he would consult further with that attorney. *Id.* Then, even though Ms. MacDonald told Zhao that the AT&T ILECs intended to request that the Court enter a judgment against 88 Connection, neither Zhao nor his counsel communicated further. *Id.* This clearly demonstrates conscious and affirmative action on the part of Zhao, both in terms of investigating potential defenses and consulting with counsel, thus signifying a strategic decision to allow a default judgment to be entered against 88 Connection.

In similar circumstances, courts have held that a default judgment against a corporation could be amended to include individuals who are the alter egos. *See Madd Dogg Athletics, Inc. v. NYC Holding*, 565 F.Supp.2d 1127, 1130 (C.D. Cal. 2008) (adding individual who was doing business under a fictitious name to default judgment against corporation because the individual was "properly served with the

7

PLAINTIFFS' REPLY ISO MOTION TO AMEND DEFAULT JUDGMENT TO ADD GANG ZHAO a/k/a CHARLIE ZHAO AS AN ADDITIONAL JUDGMENT DEBTOR; 13-CV-01157-L-KSC

721571336

Initial Complaint and Motion for Entry of Default Judgment" and received a full and fair opportunity to defend himself). The situation in the previously discussed *Shanghai* decision, where a judgment was amended to add an alter ego corporate officer, is not meaningfully distinguishable from the circumstances here; in both cases, the director strategically chose not to respond before a default judgment was taken. Although *Shangha*i is not binding precedent and is unpublished, at least one court in the Central District has cited to it. *Oceans II, Inc. v. Skinnervision, Inc.*, No. 12-cv-06867-CAS, 2015 WL 4484208 at *5 (C.D. Cal. July 20, 2015) (citing to *Shanghai Minguang*, 2008 WL 400469))).

Similarly, in *Craigslist, Inc. v. Mesiab*, No. 08-cv-05064-CW-MEJ, 2010 WL 5300883 at *9 (N.D. Cal. 2010), adopted by 2010 WL 5300881 (N.D. Cal. 2010), the court amended a default judgment to add an alter ego or successor of a company because the alter ego or successor entity "was afforded the opportunity to control the litigation." The court further noted that if the entity were not added to the judgment it would be impossible to recover damages and the defendants would have successfully "thwarted the legal process.'" *Id.* at *7.

Given that Zhao had direct knowledge of and control over the litigation before default judgment was entered, this case is distinguishable from those cited by Defendants. For instance, unlike the individual in *North Atl. Distrib., Inc. v. Teamsters Local Union No. 430*, 497 F.Supp.2d 315 (D. R. I. 2007), Zhao was personally aware of the impending default judgment motion, was consulting an attorney, explained defenses to plaintiffs' attorney and only then strategically chose to remain silent.

Similarly, in *NEC Electronics, Inc. v. Hurt*, 208 Cal.App.3d 772, 775 (1989), and in contrast to the circumstances here, the chief executive was not served with the operative complaint (rather the chief financial officer was) and was not regularly served with other court papers. More fundamentally, the chief

executive's interests were *not* aligned with the corporation, which was on the verge of bankruptcy. The court in *NEC c*ontrasted that situation with "the usual scenario where the interests of the corporate defendant and its alter ego are similar so that the trial strategy of the corporate defendant effectively represents the interests of the alter ego." *NEC*, 208 Cal.App.3d at 780. Here, the record indicates that this is a "usual scenario" (unlike *NEC*) in which the interests of 88 Connection and Zhao, its sole shareholder, director, and president, were perfectly aligned.

This case also is distinguishable from *Motores De Mexicali SA v. Superior Court In and For Los Angeles County,* 51 Cal.2d 172, 175 (1958), which involved three individuals (rather than the one here) that feasibly could have controlled the litigation and where the California Supreme Court determined that those three alter ego individuals in "no way participated in the defense of the basic action." There were no facts, like those present here, to suggest they were systematically and personally informed of case developments, were consulting with counsel, and then strategically chose not to take further action.

Finally, any due process concerns are allayed by the fact that Zhao has now formally appeared in these judicial proceedings and has even submitted two declarations, albeit belatedly and in violation of a number of evidentiary rules. ECF Nos. 25-1, 28. *See Calvin Brian International Company v. Gustto, Inc.*, No. 13-cv-0218-GPC-BLM, 2014 WL 3548143 at *4 (S.D. Cal. July 17, 2014) (holding that the fact that a default judgment was ultimately entered did not prevent amendment of the judgment since the alter ego "has been provided sufficient notice of these proceedings, from the entry of default to the present, to participate thoroughly or, at a minimum, to oppose Plaintiff's instant request to add [the alter ego] as a judgment debtor").

### IV. THE OPPOSITION CONFIRMS THAT 88 CONNECTION/ZHAO ARE LIABLE UNDER THE GOVERNING FCC ORDERS

Finally, the Opposition attempts to attack the default judgment by suggesting that 88 Connection somehow was not at fault for not paying the originating switched access charges at issue in the underlying judgment (which it concedes it never paid) because "there was no agreement by the defendant nor by any of its principals to pay these charges." ECF No. 25 at 5:12-14. If 88 Connection wished to avoid the default judgment, the appropriate time to have raised these arguments would have been when the AT&T ILECs moved for default judgment more than two years ago. These arguments are now too little, too late. In any event, the opposition concedes that there are long-standing Federal Communications Commission ("FCC") rulings that mandate the payment of those charges and elsewhere that 88 Connection was registered with the FCC. *Id.*; ECF No. 27, Ex. 8 (88 Connection's "FCC Filing Report"). Accordingly, the fact of whether any separate "agreement" existed is irrelevant given that 88 Connection and Zhao were and are required to comply with the FCC's rulings and any agreement that circumvented such requirements would be patently void and unlawful.

### V. CONCLUSION

For the reasons stated above, and given that "[t]he greatest liberality is to be encouraged in the allowance of such amendments in order to see that justice is done," (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 508), this Court should grant the AT&T ILECs' motion to amend the default judgment to add Gang Zhao, a/k/a Charlie Zhao, as an additional judgment debtor.

Dated:  September 12, 2016            MAYER BROWN LLP

By:  s/ *Matthew H. Marmolejo*
MATTHEW H. MARMOLEJO
Email:  *mmarmolejo@mayerbrown.com*
Attorneys for Plaintiffs